## No. 28353

# Colorado State Board of Medical Examiners v. Thorlief V. Jorgensen

(599 P.2d 869)

Decided August 20, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Jeffrey G. Pearson, Assistant Attorney General, for plaintiff-appellee.

Steven A. Gall, Richard A. Anderson, for defendant-appellant.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

On January 10, 1978, the Colorado State Board of Medical Examiners (Board) revoked the license of Thorlief Jorgensen (appellant) to practice medicine as an osteopathic physician in this state. Jorgensen appealed

to this court alleging that the Board committed procedural errors and that the applicable statutes were unconstitutional on their face or as applied. We affirm.

The revocation proceeding arose from three incidents.[1] In the first, Jorgensen attempted to deliver the baby of an Idaho Springs woman at her home. The woman was in labor for fifty-four hours. During that time, the appellant ignored indications of fetal distress, administered a drug in dosages greatly exceeding safe levels, and strongly objected to the woman's going to a hospital.[2] The child was eventually delivered by Caesarian section performed by another physician at a hospital.

In the second incident, Jorgensen successfully delivered a baby at the home of a resident of Ward, Colorado. However, the placenta did not deliver spontaneously. The appellant considered the situation serious and attempted to perform a manual delivery of the placenta by massaging the woman's uterus and pulling on the umbilical cord, which he broke. The woman hemorrhaged and bled for the next twenty-four hours, yet Jorgensen repeatedly urged the woman not to go to the hospital. A day and a half after the birth of the child, the woman's husband disregarded the protestations of the appellant and took his wife to a hospital where the placenta was delivered.

In the third incident, Jorgensen was convicted in United States District Court for the District of Colorado of four counts of unlawfully dispensing controlled substances. The conviction arose from the appellant's repeated sales of controlled drugs, which he had obtained because of his professional status, to an undercover agent of the Drug Enforcement Administration. Jorgensen was convicted on February 8, 1974.

After hearing evidence of these incidents, the Board made the following findings which serve as the basis for the revocation of Jorgensen's license: (1) he had been convicted of a felony, section 12-36-117(1)(f), C.R.S. 1973; (2) he had engaged in conduct unbecoming a person licensed to practice medicine, section 12-36-117(1)(j), C.R.S. 1973; and (3) he had engaged in grossly negligent malpractice, section 12-36-117(1)(l), C.R.S. 1973.

The appellant has submitted eleven issues for review. These can be summarized for the purposes of this opinion in three categories — first, that sections 12-36-117 and 118, C.R.S. 1973 (1978 Repl. Vol. 8), are unconstitutional, either on their face or as applied; second, that the hearing panel erred in receiving evidence concerning the appellant's prior felony conviction; and third, that the hearing panel was improperly constituted.

---

[1] The appellant does not challenge the sufficiency of the evidence in this appeal. As such, we do not present the facts in great detail.

[2] The appellant did not have admission privileges at any hospital in Colorado.

## I.

The appellant's argument that section 12-36-117, C.R.S. 1973 (hereinafter referred to as section 117), and section 12-36-118, C.R.S. 1973 (hereinafter referred to as section 118), are unconstitutional rests on the propositions that while section 117 defines "unprofessional conduct," section 118 imposes disciplinary measures on physicians for "misconduct" and that it cannot be presumed that unprofessional conduct is the same as misconduct. Appellant further argues that section 118 is an unconstitutional delegation of authority by the legislature because it confers upon the Board the power to legislate a definition for the term "misconduct." Additionally, the appellant asserts that if section 118 is not unconstitutional on its face, it is unconstitutional as applied because the Board has not adopted rules and regulations defining "misconduct," thereby giving physicians advance notice of the conditions under which disciplinary measures might be imposed.

Clearly, all of these arguments are based on the premise that "misconduct," as used in section 118, is not the same as "unprofessional conduct," as used in section 117. With this premise we disagree.

■ Our analysis of these two sections is based on three fundamental tenets of statutory construction. First, statutory interpretation must be governed by legislative intent; second, if a statute is susceptible of both constitutional and unconstitutional interpretations, the court will construe it to avoid constitutional infirmities; third, statutory provisions *in pari materia* must be construed together. *Public Employees Retirement Association v. Greene,* 195 Colo. 575, 580 P.2d 385 (1978); *People v. District Court,* 185 Colo. 78, 521 P.2d 1254 (1974); *People v. Lee,* 180 Colo. 376, 506 P.2d 136 (1973).

Section 117 defines "unprofessional conduct" in detail by listing sixteen types of behavior which constitute such conduct. Prior to 1977, section 118 used the term "unprofessional conduct," but that section was repealed and reenacted in 1977 and the word "misconduct" was used. Colo. Sess. Laws 1977, ch. 153, 12-36-118, section 2 at 677.

As reenacted in 1977, section 118 sets out a detailed procedure for the Board's investigation, prosecution and discipline of physicians' conduct. Although the word "misconduct" is used in the reenacted section, it must be read in context with section 117. It is evident that, in promulgating section 118, the legislature intended to discipline that conduct set forth in detail in the preceding section.

■ Applying the tenets of construction noted above to the legislative history of these provisions clearly indicates that section 117 sets forth the standards for conduct to which the procedures of section 118 apply. "Unprofessional conduct," as used in section 117, is the equivalent of "misconduct," as that term is used in section 118.

## II.

The appellant next contends that the Board's consideration of his prior felony conviction as a basis for the revocation of his license violated section 13-80-108, C.R.S. 1973, which provides that legal actions must be commenced within three years. Again, we disagree.

Section 13-80-108, C.R.S. 1973, sets forth the general statute of limitations and applies to the commencement of legal actions, not to the consideration of evidence in a professional disciplinary proceeding. The purpose of a statute of limitations is to promote justice, discourage unnecessary delay and forestall the prosecution of stale claims. *Rosane v. Senger,* 112 Colo. 363, 149 P.2d 372 (1944). That rationale has no applicability to the admissibility of evidence of a prior conviction in a disciplinary hearing to determine the qualifications of a professional for two reasons. First, a statute of limitations is not applicable to the evidentiary use of an incident; rather, it applies to the substantive adjudication of the merits of a legal right which allegedly arises from the incident. *See* 51 *Am. Jur. 2d, Limitation of Actions* § 2. In addition, the general statute of limitations applies to the commencement of legal actions — *i.e.,* civil or criminal actions — not to the institution of an administrative disciplinary proceeding. *State v. Josefsberg,* 275 Wis. 142, 81 N.W.2d 735 (1957); *Latreille v. Michigan State Board of Chiropractic Examiners,* 357 Mich. 440, 98 N.W.2d 611 (1959). *Anne Arundel County Bar Association v. Collins,* 272 Md. 578, 325 A.2d 724 (1974); *Boyle v. Missouri Real Estate Commission,* 537 S.W.2d 603 (Mo. App. 1976). The general statute of limitations in section 13-80-108, C.R.S. 1973, does not apply to the consideration of the appellant's felony conviction in this administrative proceeding.

The appellant argues in the alternative that, even if evidence of the prior conviction could be considered by the Board, evidence of the circumstances which led to the conviction could not be so considered. This argument contravenes the plain language of section 117(1)(f) and section 24-5-101, C.R.S. 1973. The effect of those sections, when read together, is that a prior felony conviction — standing by itself — is not sufficient to warrant the denial or revocation of a license. Rather, the pertinent circumstances must be considered to determine the moral character of the applicant or licensee.

## III.

The final contentions of the appellant concern the composition of the hearings panel which revoked his license. He points both to section 118(1), which requires a hearings panel to consist of five persons, and to section 12-36-103(4), C.R.S. 1973 (hereinafter referred to as section 103), which requires the affirmative votes of four members of the Board in order to revoke a license to practice medicine. Thus, he alleges, the revocation of his license by a three-member panel plainly failed to meet these statutory

requirements.

■ Jorgensen's first contention is easily resolved. Although section 118(1) does provide that the president of the Board shall divide it into two panels of five members each for the purpose of disciplinary proceedings, it further states that a formal hearing may be heard by the panel *or a committee thereof*. In addition, section 118(6) provides that:

"A majority of the members of the board, inquiry panel, or hearings panel shall constitute a quorum for all purposes, and the action of a majority of those present comprising such quorum shall be the action of the board, the inquiry panel, or the hearings panel."

A quorum of a hearings panel is three members, and a majority thereof is two members. Thus, the fact that the hearings panel which revoked the appellant's license was comprised of three members does not invalidate its action.

A more difficult issue arises when one compares the terms of section 118(6), quoted *supra,* with the plain language of section 103(4) that:

"no license shall be granted, suspended, or revoked, nor shall the holder of such license be placed on probation, except upon the affirmative vote . . . of at least four members."

■ Section 103 sets forth the general governing provisions of the Board; section 118 provides the procedures to be followed by the Board in disciplinary proceedings. These statutory provisions are *in pari materia* and must be construed consistently, if possible. *P.E.R.A. v. Greene, supra.*

However, the obvious conflict between these provisions makes such a construction impossible. Section 118 would allow the revocation of a license with as few as two votes, if that number comprised a majority of a quorum. Section 103 would not allow the revocation of a license with fewer than four votes. The resolution of this conflict is found by reference to the legislative history of this act.

Section 12-36-103(4), C.R.S. 1973, was initially enacted in 1951 when the Medical Practice Act was first passed. Under the terms of the original act, the Board sat as a whole on all matters and consisted of nine members. Five members constituted a quorum, and a majority of the quorum — three members — was necessary to act on any business. However, as stated above, at least four votes were required for the important decisions concerning the granting or revocation of licenses.

The Medical Practice Act was amended in 1976 to increase the size of the Board to eleven members. Colo. Sess. Laws 1976, ch. 60, 12-36-103 at 417. In 1977, the act was further amended, and the president of the Board was directed to divide the other ten members into two panels of five members each for the purpose of conducting disciplinary proceedings. One panel (inquiry panel) is to conduct a preliminary investigation of allegations of unprofessional conduct against a physician and to determine

if a formal hearing is required. The matter is then either dismissed or referred to the other panel (hearings panel) for the formal hearing. Colo. Sess. Laws 1977, ch. 153, 12-36-118 at 677.

The conflict between these provisions was obviously overlooked by the legislature. The bifurcation of disciplinary proceedings into initial investigations by one panel and, upon recommendation, formal hearings by the other panel indicates the legislature's intent to remove the requirement of four votes in order to revoke a license after a formal disciplinary hearing. As noted above, the action of a majority of the quorum constitutes the panel's action on any matter.[3]

■ Repeal of a statutory provision by implication is disfavored in this state. *Fuhrer v. Department of Motor Vehicles,* 197 Colo. 325, 592 P.2d 402 (1979). If two provisions can be construed to avoid an inconsistency, such a harmonious construction will be adopted. *People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972).

■ Nevertheless, the doctrine of repeal by implication does exist for those unique circumstances in which the legislature evinces its intent to alter a prior statute by the subsequent passage of a clearly contradictory provision. The legislature codified this principle in section 2-4-206, C.R.S. 1973, which provides that if statutes are irreconcilable, the provision prevails which is latest in its effective date. Such a rule of construction best effectuates the intent of the legislature, and legislative intent is the guiding light in the interpretation of any statutory enactment. *Conrad v. City of Thornton,* 191 Colo. 444, 553 P.2d 822 (1976); *People v. Lee, supra.*

■ The hearings panel of the Board was properly constituted. It is no longer the law of this state that the granting, suspension or revocation of a medical license requires the affirmative votes of four members of the Board.

After considered review of this action by the Board, we hold that the Board proceeded in accord with established constitutional and statutory principles and effectuated the purpose for which it was created: the discipline of practitioners who engage in unprofessional conduct.

Accordingly, the order of the Medical Board revoking the appellant's license to practice medicine is affirmed.

■

---

[3] In this case, the panel consisted of three members who voted unanimously to revoke the appellant's license.