The PEOPLE of the State of
Colorado, Petitioner,

v.

Stefan Charles THOMPSON,
Respondent.

No. 86SC15.

Supreme Court of Colorado,
En Banc.

March 28, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for respondent.

ERICKSON, Justice.

The defendant was indicted for first-degree extreme indifference murder, section 18–3–102(1)(d), 8 C.R.S. (1984 Supp.), and for class-two felony child abuse, sections 18–6–401(1), (7)(a)(I), 8 C.R.S. (1984 Supp.). The jury acquitted the defendant of first-degree murder and returned a guilty verdict on the felony child abuse charge. The defendant was on parole at the time of the commission of the offense and the trial court imposed a sentence of twelve years and one day, which was the minimum sentence that could be imposed under the circumstances. § 18–1–105(9)(a)(II), 8 C.R.S. (1984 Supp.). We granted certiorari to review *People v. Thompson*, 717 P.2d 972 (Colo.App.1985), where the court of appeals reversed the defendant's conviction on the ground that the trial court improperly instructed the jury on the definition of "knowingly." We reverse and remand to the court of appeals with directions to affirm the defendant's conviction, and the judgment and sentence imposed by the district court.

I.

The defendant, Stefan Charles Thompson, was living in an apartment with Cynthia Minick, who was the mother of three-month-old Sequentha A. Minick and two-year-old Sadat Minick. On November 8, 1982, Cynthia Minick asked the defendant to look after her children while she took a shower. Both children were in the bedroom of the apartment and were in good health when their mother left them in the care of the defendant.

The events which occurred during the time the mother was in the shower were established by the testimony and admissions of the defendant and the testimony of expert medical witnesses who rendered opinions on the nature, extent, and cause of the injuries suffered by Sequentha. The only witness who could provide direct testimony as to the cause of Sequentha's injuries was the defendant. His description of the events resulting in the injury and death

of Sequentha was not disclosed to anyone until long after Sequentha expired from the injuries he inflicted.

During the time that he was in charge of the children, two females came to the apartment to buy marijuana from the defendant. The defendant, six-feet-five-inches tall and weighing 160 pounds, testified that he went into the bedroom where the marijuana was hidden, reached high into a closet to get the marijuana, caught his foot in a sheet on the floor and fell backwards, stepping on the abdomen of Sequentha who was lying on the floor. The child screamed and looked stunned, but the defendant did not assist the child. After completing the marijuana sale, he returned to the bedroom and wrapped the baby in a blanket. Before Sequentha's mother got out of the shower, the defendant left the apartment to smoke a joint of marijuana with two individuals who purchased marijuana from him. When the defendant returned to the apartment he heard the baby screaming, but did nothing. He did not admit causing her injuries until several months later.

When Cynthia Minick got out of the shower, the defendant was counting the money he had obtained from his two sales of marijuana. Minick saw her daughter lying on the floor, wrapped in a blanket, and noted that the infant's hands and face were cold and that her lips were purple. She asked the defendant what was wrong with Sequentha and he stated that he didn't know. He told her that he had wrapped the child in the blanket because she was cold. The temperature in the apartment at that time was 85 to 90 degrees. At trial, he admitted that he knew the victim was injured and that she was turning colors because he had stepped on her. Not only did he fail to inform the victim's mother of his actions, but he also did not assist her in obtaining assistance for the child. Several hours after the injury occurred, however, he gave Cynthia Minick money to purchase gasoline for a neighbor's car so that she could take the victim to the hospital.

When the mother arrived at the hospital, she was unable to give a history or a cause of the injury. Expert testimony established that the child would have survived the injury if prompt treatment had been afforded. It was not until an exploratory operation was performed that it became apparent that the victim had suffered a massive blood loss. The blood loss was so severe that the victim's heart had to be resuscitated three times prior to surgery and once during surgery. During the operation the victim died. None of the irreplaceable organs of the child were damaged. Her kidney, liver, spleen, and stomach were not seriously injured, but the massive loss of blood created shock and precipitated death. Experts testified that the blow which the victim received was extremely severe and would have immediately caused distress symptoms such as crying. Expert testimony also established that the failure to immediately seek help for any child who receives an injury such as that described by the defendant is indicative of conscious abuse.

II.

The trial court, in defining the term "knowingly" in felony child abuse, instructed the jury that: "A person acts knowingly when the defendant is generally aware of the abusive nature of his conduct with respect to the child." The instruction was derived from *People v. Noble*, 635 P.2d 203 (Colo.1981), where we held that knowledge of the result of the defendant's conduct is not a necessary element of felony child abuse. The court of appeals held that the instruction given by the trial court was error which required a new trial because the instruction did not require the jury to find that the defendant acted knowingly with respect to the child's death. We disagree.

The statutory definition of "knowingly" is contained in section 18–1–501(6), 8 C.R.S. (1978), which provides:

A person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowing-

ly" ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

The Criminal Code thus distinguishes between an actor's awareness of the nature of his conduct and his awareness of the results of his conduct. The court of appeals erred by limiting the application of *Noble* to the child abuse statute as it appeared before the 1980 amendment. The crime of child abuse, following the 1980 amendment, was defined in section 18–6–401(1) which states:

A person commits child abuse if he knowingly, recklessly, or through criminal negligence, and without justifiable excuse, causes or permits a child to be:

(a) Placed in a situation that endangers the child's life or health; or

(b) Placed in a situation that may endanger the child's life or health; or

(c) Exposed to the inclemency of the weather; or

(d) Abandoned, tortured, cruelly confined, or cruelly punished; or

(e) Deprived of necessary food, clothing, or shelter.

Section 18–6–401(7)(a)(I), 8 C.R.S. (1980 Supp.), provided: "When a person acts knowingly, except as to paragraph (b) of subsection (1) of this section, and the child abuse results in death to the child, it is a class 2 felony." Unlike the earlier statute, the amended statute does not include "negligently" as an alternate mental state to "knowingly" for class 2 felony child abuse.[1] The court of appeals relied on that portion of the *Noble* opinion which stated that the General Assembly would not have established "negligently" as an alternate basis for "knowingly," had it "intended

criminal responsibility to hinge on an actor's awareness that his conduct is practically certain to cause the proscribed result." *Noble*, 635 P.2d at 210. While this portion of the opinion supported our conclusion, the later amendments to section 18–6–401 do not limit our interpretation of "knowingly" in the child abuse statute addressed in *Noble*.

We acknowledged this distinction in *Noble* when we held that the element of knowingly in the offense of child abuse referred to the actor's general awareness of the circumstances endangering a child, not to his awareness that his conduct would cause some specific result. In *Noble*, we stated:

[T]he requirement of "knowingly" in the statutory definition of child abuse does not refer to the actor's awareness that his conduct is practically certain to cause the proscribed result. Instead, "knowingly" refers to the actor's general awareness of the abusive nature of his conduct in relation to the child or his awareness of the circumstances in which he commits an act against the well-being of the child. Although this distinction between awareness of one's conduct or circumstance, on the one hand, and an awareness of the result of one's conduct, on the other, at times may be a subtle one, it is a distinction recognized by the Colorado Criminal Code itself.

635 P.2d at 210 (citations omitted). The underlying principle to our holding in *Noble* was that child abuse is not a crime in which an actor knowingly effects a particular result, rather, it is an offense in which an actor knowingly creates a situation that seriously threatens the well-being of a child.[2] The child abuse statute "proscribes

---

1. Prior to the 1980 amendment, section 18–6–401(1), 8 C.R.S. (1978), defined the crime of child abuse in these terms.

A person commits child abuse if he knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be:

(a) Placed in a situation that may endanger the child's life or health; or

(b) Exposed to the inclemency of the weather; or

(c) Abandoned, tortured, cruelly confined, or cruelly punished; or

(d) Deprived of necessary food, clothing, or shelter.

2. As Judge Metzger noted in her dissent, this court was aware that the statute had been amended, but said nothing in *Noble* to indicate that its holding was inapplicable to the amended statute. *People v. Thompson*, 717 P.2d 972, 974 (Colo.App.1985) (Metzger, J., dissenting); *see Noble*, 635 P.2d at 210 n. 17, 210–11 n. 18, 212 n. 20.

acts of mistreatment which include inaction as well as action." *People v. Jennings,* 641 P.2d 276, 281 (Colo.1982). In our view, the General Assembly did not intend to limit the crime of child abuse by inaction to those instances where the accused is aware that his inaction is practically certain to result in the child's death.

In this case, the defendant acknowledged that when he slipped, fell backwards, and stepped on the victim, he knew that he caused serious injuries to the child. For the next six hours he refused to answer any questions relating to the cause of the injuries; failed to make any attempt to secure assistance for the child; and did not provide assistance apart from providing gasoline money in transporting the child to the hospital. The defendant's actions and his admissions at trial demonstrate that he was aware of the abusive nature of his conduct and that his inaction created circumstances that threatened the well-being of the child. The defendant's failure to provide assistance or information relating to the serious injury he caused constitutes felony child abuse regardless of his specific awareness of the certainty of death. *See People v. Taggart,* 621 P.2d 1375 (Colo. 1981). We conclude that the trial court's instruction on "knowingly" was consistent with the definition in section 18–1–501(6), 8 C.R.S. (1978).

Accordingly, we reverse and remand to the court of appeals with directions to affirm the defendant's conviction, and the judgment and sentence imposed by the district court.