The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent,

v.

Gerald DESKINS, Respondent/Cross–
Petitioner.

No. 95SC360.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1996.

Rehearing Denied Nov. 12, 1996.

cision reversing the convictions of Gerald Deskins (Deskins) for three counts of vehicular homicide,[1] three counts of child abuse resulting in death,[2] two counts of vehicular assault,[3] one count of driving under the influence,[4] one count of child abuse resulting in injury,[5] and six habitual offender counts.[6] *People v. Deskins,* 904 P.2d 1358 (Colo.App. 1995). Deskins was sentenced to five consecutive terms of life imprisonment. He also was sentenced to four additional terms of life imprisonment and one year in the county jail. The latter sentences were to be served concurrently with the other sentences. The issues before us are:

1. Whether the defendant, who faced both substantive charges and habitual criminal charges, was adequately advised of his right to testify.

2. Whether the court of appeals erred in holding that reckless child abuse does not require an awareness by the accused that his conduct could result in injury to a child rather than an adult.

Because we find dispositive our recent decision in *People v. Gray,* 920 P.2d 787 (Colo. 1996), we reverse the court of appeals' holding on the first issue that the *Curtis* advisement given in this case constituted reversible error. *See People v. Curtis,* 681 P.2d 504 (Colo.1984).

On the second issue, we agree with the court of appeals that the defendant was properly convicted of the child abuse charges. Thus, we affirm in part and reverse in part.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert M. Russel, First Assistant Attorney General, Wendy J. Ritz and Paul E. Koehler, Assistant Attorneys General, Criminal Enforcement Section, Denver, for Petitioner/Cross–Respondent.

David F. Vela, Colorado State Public Defender, and C. Keith Pope, Deputy State Public Defender, Denver, for Respondent/Cross–Petitioner.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review certain questions regarding the court of appeals' de-

I

In August, 1992, Deskins, while driving under the influence of alcohol, collided with another car occupied by a woman and four children. As a result of the collision, three of the children were killed and the woman and one child sustained serious injuries.

At trial, out of the presence of the jury, the trial court gave Deskins the following

1. § 18–3–106, 8B C.R.S. (1996 Supp.).

2. § 18–6–401(7)(a)(I), 8B C.R.S. (1986).

3. § 18–3–205, 8B C.R.S. (1996 Supp.).

4. § 42–4–1202, 17 C.R.S. (1996 Supp.).

5. § 18–6–401(7)(a)(III), 8B C.R.S. (1986).

6. § 16–13–101, 8A C.R.S. (1986).

advisement with respect to his right to testify:

> Sir, you are advised that you have both the right to remain silent and the right to testify. That decision is your decision certainly to be made with the advice and assistance of your attorney and whoever else you may have conferred with, but the decision is yours.

> If you decide not to testify before the jury and exercise your right to remain silent, you are entitled to an instruction to the jury that they are to draw no inference of guilt from the fact that you did not testify.

> If you decide to testify anything you do say to the jury can be used for you and against you, and you would be subject to cross-examination and impeachment.

> And in this case we are aware that there are prior felony convictions upon which you may be impeached, and the jury would have the opportunity to know and hear of the fact that you have prior felony convictions. And would be entitled to an instruction or the People would be entitled to an instruction on credibility with regard to prior criminal convictions.

In its opinion, the court of appeals noted that the trial court did not specifically advise Deskins that his prior felony convictions were admissible only for the limited purpose of credibility. *Deskins*, 904 P.2d at 1360. The court of appeals concluded that the advisement was therefore inadequate. *Id.*

In its ruling, the court of appeals relied on its earlier decision in *People v. Gray*, 899 P.2d 290 (Colo.App.1994). *Deskins*, 904 P.2d at 1360. We reversed *Gray* and rejected its analysis of the *Curtis* advisement issue in *People v. Gray*, 920 P.2d 787 (Colo.1996). Our *Gray* decision held that the advisement given in that case was sufficient to establish that the defendant's waiver of his right to testify was voluntary, knowing, and intelligent. *Gray*, 920 P.2d at 790.

The trial court's duty to make an on-the-record advisement of the defendant's right to testify was established in *People v. Curtis*, 681 P.2d 504 (Colo.1984). We held that in order to ensure that a waiver was given voluntarily, knowingly, and intentionally, the trial court should advise the defendant outside the presence of the jury

> that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that *if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.* In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*Id.* at 514 (emphasis added). The critical part of the *Curtis* advisement for both *Gray* and the case now·before us is the underscored language above. In *Gray*, we were divided on the question of whether an advisement must inform the defendant that prior felony convictions could be used *only* for the purpose of impeaching the defendant's credibility or words to that effect. *See Gray*, 920 P.2d at 795–97 (Lohr, J., concurring and dissenting). The majority, while acknowledging that it would be better practice to use such qualifying language in the advisement, held that the advisement given was adequate because it informed the defendant that his prior felonies could be raised by the prosecution to impeach his credibility. *Gray*, 920 P.2d at 791.

▮▮▮▮ The advisement given in the present case cannot be distinguished from the advisement given in *Gray*. Both advisements informed the defendant that prior felony convictions could be used by the prosecution to impeach him on cross-examination. In *Gray*, the trial court advised, " 'If you do testify you should note that the District Attorney will be able to cross-examine you about the facts of this particular case.' " *Gray*, 920 P.2d at 789. Similarly, in this case, Deskins was advised, "If you decide to testify anything you do say to the jury can be used for you and against you, and you would be subject to cross-examination and impeachment." Both advisements also informed the defen-

dant of the use of those felony convictions for credibility purposes. In *Gray,* the trial court advised,

> I understand from my review of the file that there is some issue as to whether or not you have been convicted of six prior felonies, at least that's the allegation with respect to the other part of this case. As a result of that, I anticipate that if you testify the District Attorney will inquire of you as you are testifying about the existence of these six prior felonies. *The six prior felonies would be admissible with respect to credibility.* The District Attorney can in fact talk about them.

*Gray,* 920 P.2d at 789 (emphasis in original). Similarly, in this case, Deskins was advised as follows:

> And in this case we are aware that there are prior felony convictions upon which you may be impeached, and the jury would have the opportunity to know and hear of the fact that you have prior felony convictions. *And would be entitled to an instruction or the People would be entitled to an instruction on credibility with regard to prior criminal convictions.*[7]

(emphasis added). Therefore, in light of our decision in *Gray,* we hold that the advisement given in this case with respect to prior felonies was adequate to assure that Deskins knowingly, voluntarily, and intentionally waived his right to testify.

## II

█ The second issue on which we granted certiorari concerns whether the defendant can be convicted of reckless child abuse when there was no evidence that he knew that his conduct could result in injury to a child rather than to an adult. The defendant contends that at the time of the accident he was not aware that there were children in the car that his vehicle struck. He argues that without such an awareness, he should not be held liable for child abuse.

The specific statute in question states that a person is guilty of child abuse if he or she "causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health...." § 18–6–401(1), 8B C.R.S. (1996 Supp.). A child is defined as a person under sixteen years of age. § 18–6–401(2), 8B C.R.S. (1986). The statute also states that where death or serious bodily injury results, the following shall apply:

> (I) When a person acts knowingly or recklessly and the child abuse results in death to the child, it is a class 2 felony.
>
> . . . .
>
> (III) When a person acts knowingly or recklessly and the child abuse results in serious bodily injury to the child, it is a class 3 felony.[8]

§§ 18–6–401(7)(a)(I) and (III), 8B C.R.S. (1986).

█ The culpable mental states applicable to a crime of child abuse relate not to a particular result, but rather to the nature of the offender's conduct in relation to the child or to the circumstances under which the act or omission occurred. *Lybarger v. People,* 807 P.2d 570, 575 (Colo.1991). A person acts "recklessly" when he or she consciously disregards a substantial and unjustifiable risk that, in light of the child's circumstances, a particular act or omission will place a child in a situation which poses a threat of injury to the child's life or health. *Id.* Relying on the plain wording of sections 18–6–401(7)(a)(I)

---

7. Deskins argues that the portion of the advisement quoted above is confusing and did not clearly inform him that he, Deskins, was entitled to an instruction on credibility. Fairly read, however, the underscored language shows that the trial court intended to refer to "you," *i.e.* the defendant. We also note that there was no objection or request for clarification when the advisement was given.

8. According to the statutory definition,
   [a] person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly," ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.
   § 18–1–501(6), 8B C.R.S. (1986).
   The statutory definition of recklessly states that a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(8), 8B·C.R.S. (1986).

and 18–6–401(7)(a)(III), the court of appeals concluded that "if a person acts recklessly and if that conduct . . . injures or kills a child or children, criminal liability attaches." *Deskins*, 904 P.2d at 1361. We agree.

Deskins contends that the court of appeals' interpretation of section 18–6–401 is in direct conflict with other decisions of this court. Deskins cites *People v. Christian*, 632 P.2d 1031 (Colo.1981) and *People v. Taggart*, 621 P.2d 1375 (Colo.1981), and argues that the child abuse statute requires an awareness that the reckless conduct may result in injury or death to a child, as opposed to causing an injury or death to any person, whether the person be a child or an adult. These cases distinguished a reckless act under the child abuse statute from a reckless act under the manslaughter and criminally negligent homicide statutes. We held in both cases that for the purpose of equal protection analysis, the reckless act for child abuse entails conduct particularly abusive to children and the legislature could reasonably punish more severely a crime that was so defined. *Taggart*, 621 P.2d at 1382; *Christian*, 632 P.2d at 1036. According to Deskins, it necessarily follows that a reckless act for child abuse is no more particularly abusive to children than a reckless act for manslaughter *unless* the actor is aware that his conduct poses a risk to children as opposed to anyone, adult or child. Therefore, Deskins argues, the statute requires that the jury find that he was aware that children were in the car that his vehicle struck in order for him to be found guilty of reckless child abuse resulting in death or serious bodily injury. We disagree.

■ We have long recognized that the General Assembly is entitled to provide for more severe penalties for different crimes, so long as the classification of crimes reflects substantial differences in the proscribed conduct which have a reasonable relationship to the public purpose sought to be achieved. Otherwise, the statute may violate the constitutional principle of equal protection. *People v. Montoya*, 196 Colo. 111, 113, 582 P.2d 673, 675 (1978). Both *Taggart* and *Christian* concerned this type of equal protection challenge to the child abuse statute.

In *Taggart*, the defendant was charged with and convicted of child abuse resulting in serious bodily injury. *Taggart*, 621 P.2d at 1379. The defendant in *Taggart* argued that the child abuse statute violated equal protection because it proscribed the same conduct forbidden by the criminally negligent homicide statute but carried a disproportionately greater penalty. *Id.* at 1381. We rejected this argument and held in *Taggart* that the child abuse statute and the criminally negligent homicide statute did not proscribe identical conduct. Unlike the general terms of criminally negligent homicide, we pointed out that "the proscriptions of the child abuse statute encompass conduct that is particularly abusive to children, that is directed specifically at a child, and that results in injury to that child." *Id.* at 1382. In other words, the crimes were distinct for equal protection purposes because the proscriptions of the child abuse statute were directed specifically to children.

The other case cited by the defendant, *People v. Christian*, 632 P.2d 1031 (Colo. 1981), is very similar. In *Christian*, the defendant was charged with and convicted of both child abuse and reckless manslaughter. *Christian*, 632 P.2d at 1033. Again, the defendant argued that application of the child abuse statute violated equal protection because it resulted in a higher penalty for the same conduct. *Id.* at 1035. For the purposes of equal protection, we held that "there are significant differences between the legislative proscription of specifically defined acts of child abuse resulting in serious injury . . . and the general proscription of reckless conduct resulting in death to anyone, adult or child. . . ." *Id.* at 1036.

Deskins argues that the equal protection discussions in *Taggart* and *Christian* actually require a previously unrecognized or unacknowledged "knowing" or "awareness" mens rea requirement for reckless child abuse. In our view, neither *Taggart* nor *Christian* requires that the actor be aware that the specific person injured was a child and not an adult. In these cases, the court was simply concerned with whether the requirements of the statutes satisfied equal protection. We concluded that equal protection was satisfied

because, unlike the more general statutes, the child abuse statute required conduct affecting children. Therefore, the holding of the court of appeals in this case is not in conflict with our decisions in *Taggart* and *Christian*.

As part of his argument, Deskins contends that the standard for a reckless act requires that the actor be conscious of the risk involved. According to Deskins, a conscious disregard of the risk involved in this case requires the actor's awareness of the presence of children. We agree that the plain language of the statutory definition of recklessness requires that the actor *consciously* disregard a substantial and unjustifiable risk. § 18–1–501(8), 8B C.R.S. (1986). We also agree that conscious disregard necessitates an awareness of what the risks are. However, the awareness required for reckless child abuse is simply the *risk* that one's conduct could result in an injury to a child's life or health. § 18–6–401(1), 8B C.R.S. (1996 Supp.). Therefore, the risk in this case was not that children might be in the actual car that Deskins' vehicle hit that night. On the contrary, what Deskins consciously disregarded when he drove while drunk was the risk that children would be passengers *in any of the cars on the road that night.* In our view, the record was sufficient for the jury to conclude that Deskins disregarded this risk and that the risk was substantial and unjustifiable.

The defendant essentially contends that he should be relieved of criminal liability because he was not "aware" of the age of his victims. A similar argument has been rejected in cases involving abuse of the elderly. In *People v. Suazo,* 867 P.2d 161 (Colo.App. 1993), the defendant was charged with assault of the elderly. The applicable statute defined the elderly as being over 60 years old. The defendant argued in *Suazo* that at the time of the assault he was not aware that the victim was over 60 years old and therefore should not be held criminally liable. *Suazo,* 867 P.2d at 169. The court of appeals held in *Suazo* that actual knowledge or awareness that his victim was over sixty years of age was not required. *Id.* at 170. *See also People v. Davis,* No. 94CA1132, —

P.2d ——, —— – —— (Colo.App. July 11, 1996)(applying rationale of *Suazo* to robbery of an "at-risk-adult"). The court of appeals reasoned that when the victim's age is a part of the offense, "the General Assembly has the prerogative to determine if a reasonable mistake of age shall be a defense to the crime...." *Id.*

We find the rationale of the *Suazo* decision equally applicable here. In this case, the language of the statute requires that Deskins disregard a substantial and unjustifiable risk that his conduct may cause death or injury to a child. The legislature has indicated that the victim's age is part of the offense of child abuse by defining a child as a person under sixteen years old. § 18–6–401(2), 8B C.R.S. (1986). As in *Suazo,* the General Assembly had the prerogative to determine if a mistake of age defense was appropriate and did not do so. Therefore, we hold that the standard for reckless child abuse does not require the actor's awareness that the victim was a child.

### III

For these reasons, we affirm in part and we reverse in part the judgment of the court of appeals. We remand the case with directions to the court of appeals to address the appellate issues which it did not reach in its earlier opinion because of its disposition of the *Curtis* issue.

SCOTT, J., concurs in part and dissents in part.

KIRSHBAUM, J., dissents, and LOHR, J., joins in the dissent.

Justice SCOTT concurring in part and dissenting in part:

While I would uphold the convictions and life sentences imposed against Gerald Deskins for vehicular homicide and the habitual offender counts and thus concur in part I of the majority opinion, I do not join in part II of that opinion. I dissent from part II because I believe that under the facts present here, while Deskins could be found guilty of child abuse, § 18–6–401(1), 8B C.R.S. (1986 and 1992 Supp.), the enhanced sentence

should not be imposed under sections 18–6–401(7)(a)(I) and (7)(a)(III). In my view, the majority reads our child abuse statute too broadly, potentially subjecting any citizen to a heightened criminal sentence solely because his or her negligent conduct results in an automobile accident causing serious bodily injury to a child—imposing criminal sentences I believe the General Assembly did not intend.

I

A

Section 18–6–401, 8B C.R.S. (1986 and 1992 Supp.), the controlling statute, provided at the time of the offense:[1]

(1) A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health....

. . . .

(7)(a)(I) When a person *acts knowingly or recklessly* and the child abuse results in death to the child, it is a class 2 felony.

. . . .

(7)(a)(III) When a person *acts knowingly or recklessly* and the child abuse results in serious bodily injury to the child, it is a class 3 felony.

(Emphasis added.) While the majority places great reliance upon *Lybarger v. People,* 807 P.2d 570, 575 (Colo.1991), in which we discussed the "culpable mental states applicable to a crime of child abuse," the facts of that case gave rise to a nexus between the defendant's acts and "the child's circumstances." *Id.* Hence, criminal liability was premised upon "the nature of the offender's *conduct in relation* to the child," *id.* (empha-

sis added), a consequence distinguishable from the facts here.

In *Lybarger,* Jon Lybarger was charged with felony child abuse resulting in death when his five-week-old daughter died from respiratory failure due to acute necrotizing bronchial pneumonia. Lybarger did not follow the advice of a licensed practical nurse and failed to take his daughter to a doctor or hospital when she suffered from congestion, coughing, inability to breathe, and other pneumonia or cold-like symptoms. Instead of medical care, Lybarger opted to rely solely on prayer as a means of treating his daughter's illness. Lybarger was a recognized minister in the Word of Faith Evangelistic Association, a small fundamentalist Christian religious organization. In accordance with the tenets of his religious beliefs, Lybarger and his wife relied on spiritual treatment through prayer to improve their child's health, denying the child much needed medical attention. While we reversed Lybarger's conviction because the trial court erroneously instructed the jury on the "treatment by spiritual means" defense, we discussed "the statutory scheme relating to the crime of child abuse resulting in death." *Id.* at 575.

In *Lybarger,* there was a nexus between the defendant's conduct and the circumstances or condition of the child. To the contrary, in this case, other than the event of the accident, there is no identifiable relationship or nexus between the defendant and the child victims. Although we are confronted with a most unfortunate accident and while I do not disagree that the defendant must be held accountable for the natural and probable consequences of his acts,[2] I cannot agree that unreasonable conduct not directed at a victim is sufficient for the enhanced criminal liability set forth in subsections 7(a)(I) (where acts

1. Section 18–6–401 was amended in 1995. However, those amendments did not alter the language of the particular provisions relevant here.

2. As indicated in the majority opinion, the defendant, Gerald Deskins, has been convicted of three counts of vehicular homicide and habitual offender counts resulting in a sentence to five

consecutive terms of life. Maj. op. at 369. However, even if we reverse the aggravated child abuse conviction, Deskins will serve more than one term of life under his current sentence. A conviction of child abuse resulting in death, an additional count, is of little consequence in this case. However, it is the future cases involving defendants in circumstances not so egregious and which result in "serious bodily injury to [a] child" that are of concern to me.

result in death) and 7(a)(III) (where acts result in serious bodily injury).

As we held in *Lybarger*, the "crime of child abuse [does not] relate[ ] to a particular result but rather to the nature of the offender's conduct in relation to the child or to the circumstances under which the act or omission occurred." *Id.* In my view, the defendant's culpability requires a purposeful act or omission which the defendant should realize is dangerous to a child's safety. It is the defendant's conduct, under circumstances he is aware of, that is the nature of the prohibited conduct set forth in subsections 7(a)(I) and 7(a)(III) of section 18–6–401.

I would find culpability under similar facts if the defendant had placed his own or other children in his car under his diminished driving capacity and proceeded, as he did, to drive his car. Such willful and wanton conduct, which creates a potential of harm to children the defendant knows or should know are subject to his acts, is, in my view, the minimum mens rea necessary for liability under the statute. Thus, under these facts, the nexus between the defendant and the victim, based on defendant's awareness of the presence of a child, is lacking and therefore, insufficient for a reckless or knowing state of mind.

### B

In their treatise, *Substantive Criminal Law,* professors LaFave and Scott discuss recklessness and negligence:

> It came to be the general feeling of the judges when defining common law crimes (not always so strongly shared later by the legislatures when defining statutory crimes) that something more was required for criminal liability than the ordinary negligence which is sufficient for tort liability. The thought was this: When it comes to compensating an injured person for damages suffered, the one who has negligently injured an innocent victim ought to pay for it; but when the problem is one of whether to impose criminal punishment on the one who caused the injury, then something extra—beyond ordinary negligence—should be required. What is that "something extra" which the criminal law generally requires? It might logically be either one or both of two things: (1) Perhaps the defendant's conduct must involve a greater risk of harm to others than tort negligence requires. In other words, perhaps a "high degree of negligence," rather than "ordinary negligence," is necessary. (2) Perhaps, without requiring any riskier conduct than is necessary for ordinary negligence, the criminal law might require that the defendant consciously realize, in his own mind, the risk he is creating—a realization which is not required in the case of ordinary negligence. In other words, perhaps the difference between ordinary negligence and criminal negligence is simply that objective fault will do for the former, while subjective fault is required for the latter. (3) Perhaps the criminal law might require both (a) conduct creating a higher degree of risk than is necessary for ordinary negligence and (b) a subjective awareness that the conduct creates such a risk. The term "recklessness" is sometimes used to designate conduct which involves these two extra factors, (a) and (b), in addition to the requirements of ordinary negligence. The other expression commonly used to indicate something more than ordinary negligence is "gross negligence," but that expression does not give any clue as to whether it is greater riskiness or subjective realization of risk or both which goes into the word "gross."

Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.7, at 326 (1986) (footnote omitted). In reading, once again, our statutory scheme, I would hold that while subsection 18–6–401(1) contemplates "criminal negligence," the aggravated sentences called for in subsections 18–6–401(7)(a)(I) and (a)(III) certainly require "subjective fault" or "a subjective awareness."

We held in *Lybarger* that "the culpable mental states applicable to a crime of child abuse relate not to a particular result but rather to the nature of the offender's conduct in relation to the child or to the circumstances under which the act or omission occurred." *Lybarger,* 807 P.2d at 575. We further stated that a person acts recklessly

when he "consciously disregards a substantial and unjustifiable risk that, *in light of the child's circumstances,* a particular act or omission will place the child in a situation which poses a threat of injury to the child's life or health." *Id.* (emphasis added).

I believe a greater level of intent is necessary to meet our use of the language "in light of the child's circumstances." As I read *Lybarger,* our use of that phrase makes an actual awareness of the child's circumstances integral to any culpability. It therefore requires us to consider the defendant's acts in relation to the child and not allow culpability to rest on mere unreasonableness. In particular, the use of the terms "knowingly or recklessly," I would hold, requires a determination that the defendant's conduct must be purposeful and committed without regard to "injury to the child's life or health."

The statutory language was applied easily in *Lybarger* because the "child's circumstances" were known to Lybarger. Lybarger clearly knew that his daughter was ill. In contrast, in this case, the defendant did not know of "the child's circumstances" because, despite the unreasonableness of his acts, he did not act with a "subjective awareness" that his conduct would result in serious bodily injury or death to a child.

## II

I agree with the majority that our recent decision in *People v. Gray,* 920 P.2d 787 (Colo.1996), is dispositive on the first issue and would reverse the court of appeals' judgment regarding the *Curtis* advisement.[3] However, I raise the prospect of exercising our superintending authority by adopting, as part of the *Curtis* advisement, a prescribed litany, which we rejected in *People v. Chavez,* 853 P.2d 1149, 1151 (Colo.1993). Unless we do adopt such a litany, it seems to me, so long as "a trial court applies correct standards, makes necessary findings to establish a waiver, and evidence exists to support those findings, then the trial court's findings of waiver [should] not be disturbed on review." *Gray,* 920 P.2d at 790 (citing *Curtis,*

681 P.2d at 515 and *Roelker v. People,* 804 P.2d 1336, 1339 (Colo.1991)).

## III

Accordingly, while I join part I, I respectfully dissent as to part II of the majority opinion.

Justice KIRSHBAUM dissenting:

We granted petitions for certiorari review filed by the People and by the defendant, Robert Deskins, to consider two issues addressed by the court of appeals in *People v. Deskins,* 904 P.2d 1358 (Colo.App.1995): whether the trial court correctly advised the defendant of the consequences of an election to testify on his own behalf, and whether the offense of reckless child abuse as defined by sections 18–6–401(7)(a)(I) and 18–6–401(7)(a)(III), 8B C.R.S. (1986), require an awareness by an accused that his or her conduct could result in injury to a child. The court of appeals held that the trial court's advisement failed to meet the criteria established by this court's opinion in *People v. Curtis,* 681 P.2d 504 (Colo.1984), and that the two offenses proscribing child abuse by means of reckless conduct do not require an accused to be aware that his or her conduct could result in harm to a child. *Deskins,* 904 P.2d at 1360–61. The majority holds, contrary to the determination of the court of appeals, that the trial court's advisement satisfied the standards established by *Curtis* in view of our decision in *People v. Gray,* 920 P.2d 787 (Colo.1996), and affirms the court of appeals' construction of sections 18–6–401(7)(a)(I) and 18–6–401(7)(a)(III). Maj. op. at 369, 370. I conclude that the trial court's advisement to the defendant concerning the consequences of his decision to testify did not satisfy the principles enumerated in *Curtis* and view *Gray* as re-affirming these principles. I also conclude, contrary to the court of appeals, that the relevant statutes defining the offenses of child abuse resulting from reckless conduct require that an accused must be aware that his or her conduct could injure a child to distinguish such offenses from other statutorily defined offenses prohibiting reckless conduct in general. I there-

---

**3.** *People v. Curtis,* 681 P.2d 504 (Colo.1984).

fore respectfully dissent from the majority's opinion.

## I

In *People v. Curtis,* 681 P.2d 504 (Colo. 1984), we articulated standards for assessing the adequacy of a trial court advisement with respect to a defendant's constitutional right to testify on his or her own behalf pursuant to the due process clauses of the Fourteenth Amendment of the United States Constitution and article two, section 25 of the Colorado Constitution. *Curtis,* 681 P.2d at 509, 510. We held that the procedural safeguards established by the United States Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), apply to any determination of whether a defendant in fact waived his or her fundamental right to testify. *Curtis,* 681 P.2d at 514. We next held that any waiver of the right to testify must be voluntary, knowing and intentional; that the existence of an effective waiver should be ascertained by the trial court on the record; and that courts should indulge every reasonable presumption against waiver. *Id.* at 515. The rule we adopted requires a court to question the defendant on the record to ascertain whether the defendant's waiver of the right to testify is made with a complete understanding of the defendant's rights. *Id.* at 516. In recognition of the significant responsibility of trial judges to ascertain whether a defendant has voluntarily, knowingly and intentionally waived the right to testify, we emphasized the basic facts a defendant must understand to assure that the presumption of non-waiver has been overcome, as follows:

> A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the

> felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.... The purposes of the advisement by the court on the record are to ensure that waiver of a fundamental constitutional right is intelligent and knowing, to preclude postconviction disputes between defendant and counsel over the issue, and to facilitate review.

*Id.* at 514–15 (footnote and citations omitted).

Of crucial importance in this advisement is the specific requirement that the defendant know and understand that if he or she elects to exercise the constitutional right to testify, the prosecution may disclose to the jury the fact, if such be the case, that the defendant has been convicted of a felony, but that the jury will also be instructed that such fact may be considered only for purposes of credibility. *See People v. Chavez,* 853 P.2d 1149, 1152 (Colo.1993); *People v. Gray,* 920 P.2d 787, 793–98 (Colo.1996) (Lohr, J. concurring and dissenting).

The record in the present case establishes that the trial court's advisement to the defendant did not contain this crucial information concerning the fact that the defendant had previously been convicted of numerous felonies. The advisement consisted in pertinent part of the following two sentences:

> [I]n this case we are aware that there are prior felony convictions upon which you may be impeached, and the jury would have the opportunity to know and hear of the fact that you have prior felony convictions. And would be entitled to an instruction or the People would be entitled to an instruction on credibility with regard to prior criminal convictions.

Maj. op. at 370.

The second sentence of this instruction is both erroneous and ambiguous. It is erroneous in expressly indicating that only the People would be entitled to an instruction concerning the effect of the defendant's prior

felony convictions. The instruction failed to inform the defendant that should the People elect not to request such an instruction, the defendant would be entitled to insist that the jury be so instructed. The instruction is ambiguous in its description of the content of any such instruction: the phrase "on credibility with regard to prior criminal convictions" does not inform the defendant of the fact that his numerous prior felony convictions could be considered by the jury only for purposes of evaluating the credibility of the defendant's testimony. In view of the fundamental nature of the constitutional right involved and the presumption against waiver thereof, the trial court's advisement does not satisfy the test we adopted in *Curtis*.

The majority concludes that the language of the instant advisement is indistinguishable from the language of the advisement a divided court found sufficient in *Gray*.[1] However, to reach that conclusion the majority interjects the pronoun "you" into the actual advisement given by the trial court, reconfiguring the language to read: "And [you] would be entitled to an instruction ..." Maj. op. at 371 n. 7. Such interpolation admits the ambiguity of the trial court's instruction, but resolves the ambiguity in a manner that in effect suggests a presumption of waiver rather than a presumption of non-waiver. An equally if not more plausible interpolation, given the tenor of the trial court's language, would be the insertion of the words "the jury" at the outset of the critical second sentence, thus reconfiguring the court's actual language as follows:

[A]nd the jury would have the opportunity to know and hear of the fact that you have prior felony convictions. And [the jury] would be entitled to an instruction or the People would be entitled to an instruction on credibility with regard to prior criminal convictions.

If the court's actual advisement were understood by the defendant to refer to the jury's right to an instruction, the defendant would know only that if he testified the jury would be able to learn of his prior convictions and only the prosecution would be entitled to request an instruction regarding those convictions.

As the People's argument acknowledges, these post-hoc deconstructions of the trial court's actual language take on a surrealistic quality. Such exercises also suggest that a defendant should be deemed to have made all appropriate interpolations of ambiguous trial court language to support a conclusion that the defendant has voluntarily, knowingly, and intentionally waived the right to testify—a principle we rejected in *Curtis*. The rule adopted in *Curtis* was designed not only to safeguard a defendant's fundamental constitutional right to testify but also to avoid precisely the kind of post-trial semantic dueling the parties to this litigation must necessarily undertake in the face of the trial court's ambiguous and erroneous advisement. *Curtis*, 681 P.2d at 515.

In my view, the language actually used by the trial court is simply not sufficiently precise to permit this court to conclude that the

---

1. The advisement in *Gray* included the following pertinent language:

   I anticipate that if you testify the District Attorney will inquire of you as you are testifying about the existence of these six prior felonies. *The six prior felonies would be admissible with respect to credibility.*

   *Gray*, 920 P.2d at 789 (emphasis in original).

   As this court unanimously agreed, this language did not expressly inform Gray of the fact that if he testified his six prior felony offenses could be considered by the jury only for purposes of impeachment. *Id.* at 791; *id.* at 794 (Lohr, J. dissenting). The majority of the court found no reversible error in the advisement administered to Gray because the trial court advised the defendant that his testimony regarding prior convictions " 'would be admissible with respect to credibility,' " *id.* at 791, and because in its view "the

trial court did not mislead [the] defendant." *Id.* at 792. Furthermore, the majority acknowledged that "a more clear and full advisement, stating that evidence of prior felonies could be considered by the jury only for purposes of impeachment" would constitute a "better" advisement, but suggested that the fact that the record revealed that the defendant's attorney had counseled the defendant concerning the defendant's right to testify was significant. *Id.* at 791.

In this case, the ambiguous instruction did mislead the defendant. Of more significance than the differing views respecting the adequacy of the advisement expressed by the majority and minority opinions in *Gray* is the unanimous reaffirmation by this court of the rule and principles, as articulated in *Curtis*, that courts should indulge every reasonable presumption against waiver. *Id.* at 790.

defendant voluntarily, knowingly and intentionally waived his right to testify. While no precise formula is or should be required, the trial court's actual language must convey accurate information in words sufficiently precise to permit an appellate court to conclude, solely on the record, that the presumption of non-waiver has been overcome. The admittedly ambiguous language constituting the advisement to the defendant in this case does not satisfy those requirements. The court of appeals so held, and I would affirm that portion of the court of appeals' opinion.

## II

I must also respectfully dissent from the majority's construction of sections 18–6–401(7)(a)(I) and 18–6–401(7)(a)(III), defining certain types of child abuse offenses, and in its application of those statutes to the facts of this case.

The General Assembly has defined child abuse as "[causing] an injury to a child's life or health." § 18–6–401(1), 8B C.R.S. (1996 Supp.). This definition contains no mens rea element. However, the General Assembly has defined the mens rea elements applicable to the offense of child abuse in portions of the criminal code specifying potential penalties for said offenses, as follows:

(I) When a person acts knowingly or recklessly and the child abuse results in death to the child it is a class 2 felony.

. . . .

(III) When a person acts knowingly or recklessly and the child abuse results in serious bodily injury to the child it is a class 3 felony.

§§ 18–6–401(7)(a)(I), –401(7)(a)(III), 8B C.R.S. (1986). When the General Assembly prescribes a culpable mental state as an element of an offense, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears. § 18–1–503(4), 8B

C.R.S. (1986). No such intent is discernible here.

In *People v. Taggart*, 621 P.2d 1375 (Colo. 1981), we recognized that one of the elements of the offense of child abuse is that the conduct of the accused in some fashion be child-oriented, as opposed to being directed toward the public at large. We made the following pertinent observations concerning that distinction:

The proscriptions of section 18–6–401 encompass conduct that is particularly abusive to *children*, that is directed specifically against a *child*, [as opposed to conduct directed toward] *anyone*, adult or child.

*Taggart*, 621 P.2d at 1382 (emphasis in original). *See also Lybarger v. People*, 807 P.2d 570, 575 (Colo.1991); *People v. Thompson*, 756 P.2d 353, 355 (Colo.1988); *People v. Christian*, 632 P.2d 1031, 1036 (Colo.1981).

Here, the defendant was charged with recklessly causing death to three children and recklessly causing serious bodily injury to another child. There is no question that in driving while intoxicated, the defendant acted recklessly—he consciously disregarded a substantial risk that he might kill or seriously injure persons on or in close proximity to the road that night. *See* § 18–1–501(8), 8B C.R.S. (1986) (defining reckless conduct). The defendant was charged with and convicted of the offenses of vehicular homicide and assault.[2] The defendant could also have been charged with the offenses of reckless manslaughter and assault in the second degree.[3] However, in view of the statutory scheme adopted by the General Assembly, he cannot be charged with offenses of child abuse simply because some of the victims of his reckless conduct were children.

We have not previously considered the application of the reckless mens rea element as defined in sections 18–6–401(7)(a)(I) and 18–6–401(7)(a)(III) to the child-oriented element of child abuse that distinguishes such offenses as assaults on children from assaults

---

**2.** §§ 18–3–106 and –205, 8B C.R.S. (1992 Supp.). Vehicular homicide and assault are both defined as strict liability crimes, so as to eliminate the seldom applicable defense that even if the drunk driver had been sober and non-negligent, the accident still would have occurred.

**3.** §§ 18–3–104(1)(a) and –205(1)(d), 8B C.R.S. (1986).

on non-child victims. In the typical case of child abuse we would not need to consider this question because the accused's conduct would include some kind of face-to-face contact with a child, and the actor would thus know that his or her conduct is directed toward a child. *See, e.g., Lybarger v. People,* 807 P.2d 570, 572–73 (Colo.1991) (defendant refused medical treatment in favor of spiritual treatment for child's illness); *People v. Thompson,* 756 P.2d 353, 354 (Colo.1988) (defendant stepped on child); *People v. Christian,* 632 P.2d 1031, 1033–35 (Colo.1981) (defendant beat child); *People v. Taggart,* 621 P.2d 1375, 1379 (Colo.1981) (same). Actual knowledge of child-orientation satisfies the mens rea requirements of recklessness or criminal negligence specified in the statute. § 18–1–501(3), 8B C.R.S. (1986).

The defendant asserts that in order to be convicted of child abuse he must have known that his conduct could result in injury to a child rather than to an adult. I do not agree with this argument. As the majority notes, section 18–6–401 does not require a defendant to actually know that his or her conduct would affect a child. Maj. op. at 376. However, the statute does require that the actor's criminal conduct be oriented in some discernable fashion toward children as opposed to the population at large. *Taggart,* 621 P.2d at 1382. If an actor's culpable conduct is oriented toward the population at large, it is purely accidental that a child rather than an adult is victimized. *Id.*

In this case, the evidence establishes only that the defendant's reckless conduct was directed toward the general population. Such conduct is punishable by the general assault and vehicular homicide statutes.[4] In reaching the opposite conclusion, the majority conflates the injury-causing element of child abuse offenses with the child-oriented substantive elements of such offenses. The defendant consciously disregarded a substantial risk that he would injure somebody. He did not consciously disregard a substantial risk that he would injure a child as opposed to a member of the population at large. If the defendant had driven through a well-marked school zone while intoxicated, such evidence might well establish the requisite child-orientation of his culpable conduct. If the defendant had driven his car while intoxicated on Halloween night, when he should have known that children could be walking the streets and sidewalks, such evidence might well establish the child-orientation component of his culpable conduct. The suggestion that the defendant may be charged with the knowledge that children are often passengers in cars does not satisfy the requirement that the defendant have some awareness that his victims will most likely be children. Children constitute a portion of the general population; the general assault and vehicular homicide statutes define offenses oriented toward the general population.

The court of appeals' holdings in *People v. Suazo,* 867 P.2d 161 (Colo.App.1993) and *People v. Davis,* No. 94CA1132, — P.2d —— 1996 WL 385669 (Colo.App. July 11, 1996), do not suggest a different result. Those cases construed statutes providing increased penalties for crimes directed at elderly or disabled adults.[5] Like the child abuse statute, these statutes increase the penalties for injury-causing crimes, and therefore contemplate direct contact between the actor and his elderly or disabled victim. Moreover, in defining the one instance of a crime against an at-risk adult which does not involve physical injury, the General Assembly has chosen to require that the crime be committed in the presence of the at-risk adult. § 18–6.5–103(5), 8B C.R.S. (1996 Supp.) (theft from an at-risk adult). If the General Assembly had intended the at-risk status of the victim to be a matter of strict liability, it would not have required the victim's presence in its definition of theft from

---

4. The contrary result reached by the majority, in my view, invites constitutional challenges to the statutory scheme, challenges which we should avoid if at all possible when construing legislation. *See, e.g., Colorado State Bd. of Medical Examiners v. Jorgensen,* 198 Colo. 275, 278, 599 P.2d 869, 871 (1979).

5. § 18–6.5–103, 8B C.R.S. (1996 Supp.) (crimes against at-risk adults). An earlier assault on the elderly statute, § 18–3–209, 8B C.R.S. (1986), was recently repealed and replaced with the more general and better drafted crimes against at-risk adults statute.

an at-risk adult. *Accord* §§ 18–3–202(e), –202(e.5), 8B C.R.S. (1986 & 1996 Supp.) (enhanced penalties for the offenses of assaulting a peace officer, fireman, judge, or officer of the court require that defendant should reasonably be aware of the victim's status).

For the foregoing reasons, I respectfully dissent from the majority opinion. I conclude that the court of appeals correctly held that the defendant must be granted a new trial in view of the trial court's inadequate *Curtis* advisement. I also conclude that the defendant's convictions for offenses of reckless child abuse must be vacated.

I am authorized to say that Justice LOHR joins in this dissent.