The PEOPLE of the State of Colorado, Plaintiff-Appellee

v.

Darryl CHRISTIAN, Defendant-Appellant.

No. 80SA403.

Supreme Court of Colorado, En Banc.

Aug. 31, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Morgan Rumler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dick Gottsegen, Colorado Springs, for defendant-appellant.

QUINN, Justice.

Darryl Christian (defendant) was convicted of the crimes of child abuse, section 18–6–401, C.R.S.1973 (1978 Repl. Vol. 8), a class three felony, and reckless manslaughter, section 18–3–104(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), a class four felony. In this appeal he contends that the disparity in the statutory penalties for the two offenses violates equal protection of the laws, that the court erred in its rulings on numerous evidential matters during the trial, and that the evidence presented at trial was insufficient to support his conviction for child abuse.[1] We affirm.

## I. *Trial Proceedings*

The indictment charged the defendant in one count with felony child abuse on April 27, 1979, and in another count with reckless manslaughter on the same date. The defendant, an enlisted man in the army, was stationed at Fort Carson and lived off-base in Colorado Springs with his wife, Lynette, and their three and one-half month old daughter, Eileen. The charges arose out of the death of the daughter and the cause of her death was the primary issue contested during trial. The prosecution's case was complicated by the recalcitrance of the defendant's wife to testify in accordance with her prior statements to the police and her grand jury testimony regarding the defendant's conduct toward the child.

During the late afternoon of April 27, 1979, the defendant had exclusive custody of the child while his wife went shopping.

The child recently had been treated for a cold and a loss of appetite but, except for some intermittent crying, appeared to be in reasonably good condition when the wife left the apartment. Upon the wife's return from the shopping trip about 90 minutes later, the defendant was outside their apartment in an agitated state and told her that the child was "stiff." Although he had no explanation for the child's condition, it was apparent to both parents that the child's limbs had begun to rigidify. They took her to the emergency room at Fort Carson Hospital at 7:30 p. m. The medical examination of the child revealed that she was unresponsive to stimuli and that her skull was abnormally hard from pressure inside the skull cavity. In response to questioning by medical attendants, the defendant, denying any history of trauma, stated that the child had been hospitalized a few weeks earlier for a similar problem. Upon further questioning he explained that the child sat up in the crib and tumbled over, striking her head against the side rails. When a physician's assistant challenged his statement about a child of such tender age sitting up, the defendant stated that the child had become agitated and struck her head in thrashing about the crib. The defendant's explanation of a bruise on the child's nose was that she bumped against his thumb while he had been holding her. The wife, who heard the defendant's explanation of the child's injuries, said in an agitated state that she was leaving and going back to Chicago as soon as the incident was over.

Because the child needed neurological facilities not available at Fort Carson, she was taken to Penrose Hospital in Colorado Springs. Her condition deteriorated rapidly and at 11:20 p. m., after the collapse of her respiratory and circulatory systems, she died. An autopsy disclosed that the cause of death was cranial cerebral trauma which included three fractures in the parietal region of the skull. In the opinion of the

---

1. This appeal was originally filed in the Colorado Court of Appeals, but, because of the defendant's challenge to the constitutionality of the child abuse statute, it was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973.

pathologist who conducted the post-mortem examination, the fractures were not accidentally caused and probably were inflicted with a blunt object. Over the defendant's objection, photographs of the child taken before and during the autopsy were admitted in order to depict the nature of the injuries and to demonstrate the precise medical cause of death.

The child suffered similar injuries on March 19, 1979. On that evening the defendant and his wife brought the child to Fort Carson Hospital in an acute condition with obvious facial contusions and abrasions, including fingernail imprints on the temple region. The defendant stated to the emergency room attendants that he suddenly stopped his automobile to avoid a collision and that the child, who was seated with him and his wife in the vehicle, fell forward and struck her head against an ashtray. The wife had a swollen lip and told the attendants that it also had been caused in the near collision. The child's condition was diagnosed as a subdural hematoma in the left posterior region of the skull.[2] The child was transferred to Penrose Hospital for treatment and was released on March 26.

Prior to the prosecution's calling the defendant's wife as a witness, the court conducted a hearing outside the presence of the jury and overruled the defendant's objection to evidence relating to two recent domestic quarrels on March 19 and April 19, 1979, which resulted in injuries to the child.[3] Although the wife previously had given a statement to the police and testified before

the grand jury about the defendant's abusive conduct resulting in injuries to the child on these dates, the district attorney advised the court that, when called as a prosecution witness, she intended either to deny making the statements or to assert their falsity. The court ruled that the prosecution would be permitted to impeach her with her prior statements and, upon proper foundation, the statements could be admitted pursuant to section 16–10–201, C.R.S. 1973 (1978 Repl. Vol. 8),[4] as substantive evidence of the facts contained therein.

When called as a prosecution witness, the wife denied any prior acts of child abuse by the defendant and repudiated her prior inconsistent statements. According to her prior statements, the contents of which were duly established, the following events took place on March 19 and April 19, 1979. On March 19 she and the defendant had a domestic quarrel during which she left the apartment to avoid a beating. The defendant later took the child with him and drove around looking for her. Upon his wife's return several hours later, the defendant struck her on the mouth. The child at this time was in the apartment but was unresponsive and the child's eyes were blackened. The defendant and his wife took the child to Fort Carson Hospital, agreeing on the way to fabricate the story about the child striking its head against the ashtray in the vehicle. On April 19 the defendant became upset while feeding the child and inflicted bruises on her arms. His wife at this time went to the landlady's apartment above her own to telephone her mother. In

2. A neurosurgeon explained that the force of a blow inflicted on the front part of the skull can cause an injury to veins and brain tissue on the side of the brain opposite the blow.

3. The defendant expressly requested the court not to give a limiting instruction to the jury with respect to the similar offense evidence. The court acceded to the defendant's request and, accordingly, a *Stull* instruction was not given. *See Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). The court ruled inadmissible evidence of other domestic quarrels not resulting in injury to the child.

4. Section 16–10–201, C.R.S.1973 (1978 Repl. Vol. 8), provides:

"(1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:

(a) The witness, while testifying, was given an opportunity to explain or deny the statement, or the witness is still available to give further testimony in the trial; and

(b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge."

the presence of the landlady, she told her mother over the telephone that she was coming home "because Darryl was downstairs beating on her and smacking on the baby."

The prosecution also presented evidence showing that on March 22, 1979, a police officer interviewed the defendant and his wife at their apartment. The wife told the officer that her child was in the hospital as a result of her husband being in a near car wreck a few days earlier but that she didn't believe the "car wreck story." She also admitted to the officer that she had lied to the doctors about being in the car at the time of the injury in order to avoid telling them about her own beating at the hands of the defendant. Over the defendant's objection on grounds of relevancy, the prosecution offered evidence showing that the defendant told the officer about the near car wreck and the child's injury on March 19 but added that only he and the child were in the vehicle on that occasion.[5]

Another prosecution witness, an acquaintance of the defendant's wife, described her observations of bruises on the arms and legs of the child prior to March 19. She testified that the wife tried to persuade her to change her testimony about seeing the bruises before the occurrence of the alleged car injury to the child. She also related the wife's description to her of other efforts which the wife made to change the testimony of the landlady concerning the April 19 incident.

At the conclusion of the prosecution's case the court denied the defendant's motion for judgment of acquittal. The defendant testified as a witness and denied any acts of child abuse. He described the child's generally deteriorating condition for the two days before her death, including her inability to eat and constant vomiting. A neurosurgeon testified for the defense that in his opinion the child died of dehydration which could have developed as a

result of a head injury but any such injury would have occurred several days prior to April 27.

At the conclusion of the evidence the court submitted general verdicts of guilty and not guilty to the crimes of child abuse and reckless manslaughter. The jury returned guilty verdicts on both charges. The court sentenced the defendant to a term of five to fifteen years for child abuse and a concurrent indeterminate term not to exceed ten years for manslaughter. This appeal followed.

## II. *The Constitutionality of 18–6–401*

We first consider the defendant's claim that section 18–6–401, C.R.S.1973 (1978 Repl.Vol. 8), violates equal protection of the laws, *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, because it proscribes identical conduct encompassed by reckless manslaughter, section 18–3–104(1)(a), C.R.S. 1973 (1978 Repl.Vol. 8), but authorizes the imposition of a greater penalty than reckless manslaughter.

On the date of the offenses, April 27, 1979, the crime of child abuse as charged in the indictment was defined in section 18–6–401 as "knowingly, intentionally, or negligently, and without justifiable excuse," causing or permitting a child (a person under the age of sixteen) to be "[p]laced in a situation that may endanger the child's life or health" or to be "tortured" or "cruelly punished." Under section 18–6–401(7), child abuse resulting in serious bodily injury was classified as a class three felony which carried a penalty of five to forty years. Section 18–1–105, C.R.S.1973 (1978 Repl. Vol. 8).

In contrast, a person commits the crime of reckless manslaughter if "[h]e recklessly causes the death of another person." Section 18–3–104(1)(a), C.R.S.1973 (1978 Repl. Vol. 8). "A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or

---

5. In order to comply with the trial court's ruling excluding evidence of domestic quarrels not resulting in injury to the child, the prosecution carefully avoided eliciting any testimony from the police officer that he was at the defendant's home to investigate a report of a present disturbance between the defendant and his wife. In cross-examining the officer, defense counsel elicited testimony that the defendant and Lynette were engaged in a fight and that Lynette had a bloody nose and a swollen lip.

that a circumstance exists." Section 18–1–501(8), C.R.S. 1973 (1978 Repl.Vol. 8). Reckless manslaughter was a class four felony punishable by an indeterminate term of imprisonment from one day to ten years. Section 18–1–105, C.R.S.1973 (1978 Repl. Vol. 8).

In *People v. Taggart*, Colo., 621 P.2d 1375 (1981), we dealt with a challenge similar to that raised here. Recognizing that section 18–6–401 is directed specifically to conduct abusive to children, as distinguished from criminal negligence resulting in death to anyone, adult or child, we held that there was no constitutional infirmity in the statutory scheme which imposed greater penalties for child abuse than for criminally negligent homicide:

"We conclude that the legislature was well within its discretion in determining that the conduct encompassed by the statutory definition of child abuse in section 18–6–401 is deserving of a classification distinct from the general statutory prohibition against criminally negligent homicide. Children are much less able than adults to protect themselves from the risks of injury or death associated with the acts proscribed by section 18–6–401, and those acts are most likely to be committed by someone in a parental or custodial relationship to a child of tender years." *People v. Taggart, supra.* Colo., 621 P.2d at 1382.

■ For purposes of equal protection, there are significant differences between the legislative proscription of specifically defined acts of child abuse resulting in serious bodily injury, as outlined in section 18–6–401, and the general proscription of reckless conduct resulting in death to any person, adult or child, as proscribed in section 18–3–104. We conclude that the legislative classification of child abuse as a crime warranting a more serious penalty than reckless manslaughter does not violate equal protection of the laws.

### III. *Evidentiary Rulings*

### A. *Other Acts of Child Abuse*

Conceding that section 18–6–401(3), C.R.S.1973 (1978 Repl. Vol. 8), renders unavailable the marital privilege in child abuse prosecutions, *see, e. g., Jordan v. People*, 161 Colo. 54, 419 P.2d 656 (1966), *cert. denied*, 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967), the defendant nevertheless argues that the privilege applies to this case because his wife's testimony concerning marital disturbances was unrelated to the issue of child abuse. We find this argument analytically unsound. If the wife's testimony was not probative of the charge, then such testimony should have been excluded not on grounds of privilege, but due to its irrelevancy or prejudiciality.

■ Generally, evidence of other criminal acts is inadmissible because of its prejudicial effect. *E. g., People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). However, a limited and well defined exception is recognized in those situations where a similar act tends to establish the defendant's criminal culpability for the crime charged by showing that it "was part of a continuing scheme and hence not the result of accident or legal justification." *People v. Taggart, supra*, Colo., 621 P.2d at 1384; *see also, e. g., People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974); 1 *C. Torcia, Wharton's Criminal Evidence* § 249 (13th ed. 1972). Prior to the admission of the similar offense evidence the prosecution presented evidence of two statements made by the defendant to medical attendants at Fort Carson Hospital on March 19 and April 27, when the child was taken there in a severely injured condition. The defendant's March 19 statement attributed the child's injuries to a near automobile collision on that date. On April 27 he told the emergency room personnel that the child's present condition was caused by her falling or thrashing about in her crib, while also denying any intervening trauma between the March 19 and April 27 injuries. The defendant's statements concerning the child's injuries, both of which were properly admitted during the prosecution's case in chief, raised the issue whether the child's death was attributable, on the one hand, to

an accident as claimed by the defendant or to the act of child abuse as charged in the indictment.

The propriety of admitting evidence relating to the March 19 and April 19 domestic disputes and the child's injuries resulting therefrom hinges on whether there was sufficient evidence to permit a reasonable inference that these incidents involved acts of child abuse by the defendant. The following factors, none of which is conclusive of the issue, provided sufficient foundation for the admission of the March 19 incident: the nature of the injuries present on that occasion, including multiple contusions and abrasions to the face and fingernail imprints on the child's temple; the ongoing domestic strife between the defendant and his wife on that day; the occurrence of the injuries while the child was in the exclusive custody of the defendant; and the wife's pretrial admissions that she and the defendant mutually agreed to falsely attribute the child's injuries to an automobile mishap. Similarly, there was an adequate foundation for admitting the April 19 incident as a prior act of child abuse. That incident also arose out of a domestic quarrel and, according to the wife's statement overheard by her landlady, the wife was present in the apartment when the bruises were inflicted by the defendant on the child's arms.

Considering the proximity in time and similarity of circumstances between the prior incidents and the April 27 offense, as well as the logical nexus between these recent similar offenses and the issue of the defendant's *mens rea* for the crime charged, we conclude that the trial court did not err in admitting the challenged evidence. *See People v. Taggart, supra.*

### B. *The Defendant's Statement of March 22*

■ The defendant asserts that the court erred in not excluding as irrelevant his statement to a police officer on March 22 that he was alone with the child when the March 19 injury occurred. We find no merit in this argument.[6]

6. When the defendant made the statement on March 22 he had not been arrested and he raises no claim relating to custodial interroga-

The child's injuries and the circumstances in which they occurred clearly were relevant issues in this case. Before the challenged testimony was admitted, the prosecution, without objection, already had presented evidence of statements made by the defendant and his wife on March 19 in which they described to emergency room attendants how the child sustained the head injury while they both were present in the vehicle and how the wife herself was injured at the same time. The defendant's March 22 statement was an admission on a relevant matter. *See, e. g., People v. Forbes,* 185 Colo. 410, 524 P.2d 1377 (1974). The inconsistent character of this statement, when compared with his prior statement of March 19, served only to enhance its use as substantive evidence. *See generally* Fed.R.Evid. 801(d)(2)(A), Advisory Committee's Note, 56 F.R.D. 297 (1972).

### C. *Photographic Evidence*

The defendant contends that reversible error occurred in the admission of several photographs of the victim. His arguments are twofold, both of which are unconvincing.

■ First he claims the court erred in admitting a photograph depicting an abrasion inside the child's upper lip because there was insufficient foundation as to the cause of that injury. This photograph was taken at the intensive care unit of Penrose Hospital shortly after the child's death. Any lack of foundation at the time of its admission was subsequently cured when a pediatrician testified for the prosecution that, in his opinion, such injury was consistent with a forced-feeding of the child. Thus, any arguable error relating to this photograph goes to the timing of its admission only and, under these circumstances, must be deemed harmless. Crim.P. 52(a).

■ The defendant next argues that the inflammatory nature of photographs depicting the child before and during the autopsy outweighed the probative value of this evidence. We disagree. The trial court, pos-

tion or the constitutional admissibility of the statement.

sessing broad discretion in these matters, not only withheld certain photographs which it believed were cumulative and inflammatory in nature, but also cautioned the jury about being unduly influenced by the photographs admitted.[7] The cause of the child's death was the central issue in the case and the photographs admitted into evidence were relevant to that issue and "their relevancy clearly outweighed any potential for prejudice attaching to the admission." *People v. Taggart, supra,* Colo., 621 P.2d at 1386; *see, e. g., People v. Glenn,* Colo., 615 P.2d 700 (1980); *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969).

### IV. *Sufficiency of the Evidence*

■ The final issue we consider is whether the evidence is sufficient to support the jury's verdict of guilty to the crime of child abuse. In considering the sufficiency of evidence we must determine whether the prosecution's evidence, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of child abuse as charged beyond a reasonable doubt. *E. g., People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973); *accord, People v. Gomez,* Colo., 632 P.2d 586 (1981); *People v. Elkhatib,* Colo., 632 P.2d 275 (1981). Here there was no direct evidence of the defendant's infliction of the fatal injuries on the child on April 27, 1979. However, "[t]he substantial evidence test affords the same status to circumstantial evidence as to direct evidence, and an exclusively circumstantial case need not exclude every reasonable hypothesis other than guilt to withstand a motion for a judgment of acquittal." *People v. Elkhatib, supra,* Colo., 632 P.2d at 279.

■ Expert medical testimony established that the three skull fractures and brain damage of April 27 did not occur in the manner described by the defendant to the emergency room attendants at Fort

Carson Hospital. Rather, the prosecution's medical witnesses testified that these injuries were non-accidental, were probably inflicted with a blunt object, and, being separate and distinct from the injuries of March 19, were the direct cause of the child's death. Substantial evidence, albeit circumstantial, places the occurrence of these injuries during that period when the defendant was alone in the apartment with the child. Notwithstanding the efforts of the defendant's wife to repress all evidence of child abuse, the similar offense evidence demonstrates the defendant's abusive conduct toward the child on prior occasions and is circumstantially probative of his culpable mental state with respect to the offense charged. When the evidence is viewed in its totality and under the appropriate standard of review, it is sufficient to permit a reasonable person to conclude beyond a reasonable doubt that the defendant committed felony child abuse against his child on April 27, 1979.

The judgment is affirmed.

---

**7.** When the photographs were admitted the court instructed the jury as follows:

"The death of the child is always a tragic circumstance, and these photographs tend to be rather explicit in terms of the anatomy of the child. I want you to keep in mind that you are to set aside any sympathy that you might have that arises as a result of observing these photographs, and decide this case solely upon the merits of this matter."