1 

2026 CO 3
 The People of the State of Colorado, Plaintiff-Appellant: v. Amanda Ann Soron. Defendant-Appellee: 
No. 25SA203
Supreme Court of Colorado, En Banc
January 12, 2026
 Interlocutory Appeal from the District Court Arapahoe County District Court Case No. 23CR609 Honorable Natalie Girard Stricklin, Judge 
 Attorneys for Plaintiff-Appellant: 
 Amy L. Padden, District Attorney, Eighteenth Judicial District 
 L. Andrew Cooper, Senior Deputy District Attorney 
 Centennial, Colorado 
 Attorneys for Defendant-Appellee: 
 Megan A. Ring, Public Defender 
 Gracen W. Short, Deputy Public Defender 
 Dillon, Colorado 
 Erin Domaracki, Deputy Public Defender 
 Centennial, Colorado 
 JUSTICE GABRIEL delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, and JUSTICE BERKENKOTTER joined. 
 OPINION 
 GABRIEL JUSTICE 
 
2

 ¶1 In this interlocutory appeal, the People ask this court to reverse the trial court's order suppressing both Amanda Ann Soron's hospital records and the body-worn camera video and notes of a police officer who was present in the ambulance ride to a hospital and during Soron's treatment at the hospital after police found her and her deceased newborn child behind a store. 
 ¶2 We conclude that the trial court correctly determined that Soron's medical records are protected by the physician-patient privilege and that the child abuse exception to that privilege does not apply because that exception relates only to testimony, not to documents. We further conclude, however, that additional findings are necessary to determine whether the information contained in the officer's body-worn camera video and notes is protected by the physician-patient privilege and, if so, whether the legislature has narrowed that privilege based on other policy interests. 
 ¶3 Accordingly, we affirm in part and reverse in part the trial court's suppression order, and we remand this case to the trial court for further proceedings consistent with this opinion. 
 I. Facts and Procedural Background 
 ¶4 Soron, who was unhoused, gave birth outdoors behind a Lowe's home improvement store. Temperatures were reportedly below freezing at the time, 
 
3

 and police found her shortly after the birth under a tarp with the child still attached to her by the umbilical cord. Soron and the child were transported by ambulance to Sky Ridge Medical Center, a hospital, where the child was pronounced dead. 
 ¶5 Greenwood Village Police Officer Diego Moreno accompanied Soron in the ambulance and then during portions of her stay at the hospital. Although Officer Moreno did not arrest Soron and told medical personnel that she was not in custody but rather was in an investigative detention, he donned scrubs and sat in on a surgical procedure to deliver Soron's placenta. (Soron was sedated during this procedure.) Officer Moreno's body-worn camera recorded the procedure, and, while at the hospital, he collected evidence, took photographs, and initiated a crime scene log in which he recorded the statements that Soron had made to medical providers. 
 ¶6 Approximately four months later, Soron was arrested and charged with one count of child abuse resulting in death under section 18-6-401(1)(a) and (7)(a)(I), C.R.S. (2025), a class 2 felony. The parties then began conducting discovery. 
 ¶7 The following month, Greenwood Village Police Detective Anthony Costarella filed an affidavit in support of a request for a court order for production of records ("POR"). This request sought "all medical-related information about Amanda SORON's and the deceased female baby's entire hospital visit while at Skyridge [sic] Medical Center." 
 
4

 ¶8 The trial court subsequently issued a POR, ordering the hospital to produce all medical records relating to Soron's and the child's treatment from the time they were taken by ambulance to the hospital until Soron was released from treatment. The records ordered to be produced included (1) the entire medical record for treating Soron and the child; (2) the entire radiological records and films of any related medical procedures conducted on Soron and the child; (3) all laboratory and toxicology results related to the medical treatment for Soron and the child; and (4) all ambulance notes, trip sheets, and doctors' or nurses' notes relating to the treatment of Soron and the child. The hospital appears to have complied with the POR. 
 ¶9 Soron subsequently moved to prevent the People from reviewing her medical records without a waiver or consent and further requested a veracity hearing relating to Detective Costarella's above-described affidavit, based on Soron's allegations that the affidavit contained misstatements by omission. Shortly thereafter, however, the court referred Soron for an evaluation of her competency, and in an order issued one month later, the court found Soron incompetent to proceed and committed her for in-patient restoration to competency. 
 ¶10 Almost two years later, while Soron was still deemed incompetent, the court conducted a review hearing related to Soron's competency. At this hearing, 
 
5

 Soron's counsel asked the court to rule on Soron's previously filed motion to prevent review of her medical records. Because the prosecutor of record was not present at this hearing (another prosecutor was covering for her), the court scheduled a veracity hearing for two months later. 
 ¶11 Nine days after the competency review hearing, however, the prosecution filed a request to deny Soron's motion and to vacate the veracity hearing. Soron's counsel then filed a new motion requesting that the trial court vacate the POR. 
 ¶12 In this new motion, Soron's counsel argued, among other things, that the detective's affidavit had misled the court by omitting the facts that (1) the POR had implicated Soron's privileged health records; (2) Soron was actively psychotic and under the influence of hospital drugs at the time she made the statements quoted in Detective Costarella's affidavit; and (3) without Soron's knowledge or consent, officers had taped medical procedures that Soron had undergone. Counsel further contended that because Soron had not consented to the production of her medical records, the prosecution had obtained those records illegally and in violation of the POR statute. Counsel thus asserted that everything that had happened at the hospital, including the medical procedures that were captured on Officer Moreno's body-worn camera video, was protected by the physician-patient privilege and that the court should take action to preclude unauthorized persons from obtaining access to Soron's privileged information. 
 
6

 Counsel also renewed Soron's request for a veracity hearing to consider the alleged omissions in the detective's affidavit. 
 ¶13 The prosecution responded to Soron's counsel's new motion, arguing, as pertinent here, that the physician-patient privilege did not apply in a case such as this, in which child abuse is alleged. Soron's counsel then filed a reply, and both parties submitted supplemental information. Thereafter, Soron was restored to competency. 
 ¶14 Upon Soron's restoration to competency, the trial court issued a detailed written order, granting Soron's motion to prevent review of her privileged medical information. In so ruling, the court found that the child abuse exception to the physician-patient privilege did not apply to authorize the production of Soron's medical records because the exception only authorizes physicians to testify in child abuse prosecutions. It does not cover documents. The court further found that the procedures captured on Officer Moreno's body-worn camera video and in his related notes were for purposes of medical treatment and had been obtained without Soron's knowledge or consent. As a result, in the court's view, the footage and notes reflected privileged medical information that the law enforcement officers had accessed improperly. 
 ¶15 Based on these findings, the trial court ordered the People to surrender Soron's medical file to the court for preservation and sealing. The court further 
 
7

 ordered that the body-worn camera footage should be sealed from the view of members of law enforcement and the prosecution. And the court ordered the People to provide a copy of that footage to the court for preservation and sealing. Having so ruled, the court denied Soron's renewed request for a veracity hearing as moot. 
 ¶16 The People thereafter filed this interlocutory appeal. 
 II. Analysis 
 ¶17 We begin by addressing our jurisdiction over this matter. Next, we set forth the pertinent standard of review and principles of statutory construction. We then discuss the applicable law and apply that law to the facts before us, first addressing the medical records and then the body-worn camera video and related notes. 
 A. Jurisdiction 
 ¶18 Section 16-12-102(2), C.R.S. (2025), and C.A.R. 4.1(a) authorize the prosecution to file an interlocutory appeal in this court from a trial court's order granting a defendant's pretrial motion to suppress evidence under, among other rules, Crim. P. 41(e) (providing for the suppression of evidence obtained by way of a warrantless search or an invalid warrant in violation of Fourth Amendment principles). To obtain interlocutory review, however, the prosecution must certify to both the judge who granted the motion and this court that the appeal is not taken for purposes of delay and that the evidence at issue is a substantial part of 
 
8

 the proof of the charge pending against the defendant. § 16-12-102(2); C.A.R. 4.1(a); accord People v. Thompson, 2021 CO 15, ¶ 13, 500 P.3d 1075, 1078. The prosecution has so certified here, but Soron contests our jurisdiction, arguing that the trial court did not base its order on Fourth Amendment concerns but rather relied on alleged violations of the physician-patient privilege and the POR statute. 
 ¶19 Although we acknowledge that Soron's argument finds some support in the record, we note that in issuing the ruling now before us, the trial court expressly looked to Crim. P. 41(e), analyzed the questions presented to it in accordance with the law governing search warrants, and relied on Fourth Amendment principles. In these circumstances, we conclude that we may properly exercise jurisdiction over the People's appeal pursuant to section 16-12-102(2) and C.A.R. 4.1(a). 
 B. Standard of Review and Principles of Statutory Construction 
 ¶20 A trial court's suppression order presents a mixed question of law and fact. Thompson, ¶ 15, 500 P.3d at 1078. Accordingly, on review, we accept the court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo. Id. In conducting our review, we do not substitute our own judgment for that of the trial court unless the court's findings are clearly erroneous or unsupported by the record. People v. Glick, 250 P.3d 578, 582 (Colo. 2011). We will, however, correct on review the court's application of an erroneous legal standard or its ultimate legal conclusion, if that 
 
9

 conclusion is inconsistent with or unsupported by evidentiary findings. People v. Kaiser, 32 P.3d 480, 483 (Colo. 2001). 
 ¶21 "In reviewing a trial court's ruling on a motion to suppress, we look solely to the record created at the suppression hearing." Thompson, ¶ 16, 500 P.3d at 1078. 
 ¶22 In addition, we review questions of statutory interpretation de novo. People in Int. of B.C.B., 2025 CO 28, ¶ 24, 569 P.3d 74, 79. When interpreting a statute, we seek to discern and effectuate the legislature's intent. Id. In doing so, we apply words and phrases in accordance with their plain and ordinary meanings, and we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts. Id. Moreover, we must avoid interpretations that would render any statutory words or phrases superfluous or that would lead to illogical or absurd results. Id. 
 ¶23 In construing a statute, we respect the legislature's choice of language. Id. at ¶ 25, 569 P.3d at 79. Accordingly, we may not add words to a statute or subtract words from it. Id. 
 ¶24 If the statutory language is unambiguous, then we apply it as written, and we need not look to other rules of statutory construction. Id. at ¶ 26, 569 P.3d at 79. 
 
10

 C. PORs and the Physician-Patient Privilege 
 ¶25 A court may order a POR for records in the actual or constructive control of a business entity when such records "would be material evidence in a subsequent criminal prosecution in this state." § 16-3-301.1(2)(e), C.R.S. (2025). A court may order the POR, however, "only on receipt of an affidavit sworn to or affirmed before the judge and relating facts sufficient to . . . [i]dentify or describe, as nearly as may be, the records that shall be produced." § 16-3-301.1(3)(a)(II). 
 ¶26 In its definition of "[r]ecords," the POR statute exempts from the scope of a POR any records protected by the physician-patient privilege: "'Records' shall include all documents . . . or other information retained by a business entity in connection with business activity, but shall not include an item that is privileged pursuant to section 13-90-107, C.R.S., unless the person who possesses the privilege gives consent." § 16-3-301.1(11)(e) (emphasis added). 
 ¶27 Section 13-90-107(1)(d), C.R.S. (2025), in turn, sets forth the physician-patient privilege: 
 

 [A] person must not be examined as a witness in the following
 cases: . . .
 

 
 (d) A physician, surgeon, or registered professional nurse
 duly authorized to practice his or her profession pursuant to
 the laws of this state or any other state shall not be
 examined without the consent of his or her patient as to any
 information acquired in attending the patient that was
 necessary to enable him or her to prescribe or act for the
 patient, [subject to exceptions not applicable here].
 
 
11

 ¶28 This privilege recognizes "the inherent importance of privacy in the physician-patient relationship by protecting the confidences once made." Alcon v. Spicer, 113 P.3d 735, 738 (Colo. 2005). Moreover, the privilege is not limited to communications with a physician during an examination conducted for purposes of treatment. Trenshaw v. Jennings, 2025 CO 23, ¶ 26, 568 P.3d 413, 421. It also includes observations made by a physician during such an examination. Id. And the privilege's protection extends beyond in-court testimony and covers the pretrial discovery of information, including privileged information contained in medical records. Id. The privilege may protect such information even if it may be relevant to the subject matter of the case. Id. at ¶ 28, 568 P.3d at 421. 
 ¶29 The physician-patient privilege is personal to the patient and, thus, may not be invoked or waived by the physician or a third party. Id. at ¶ 29, 568 P.3d at 421-22. The privilege does, however, have limits. For example, information is privileged only when it is necessary to enable the physician "to prescribe or act for the patient." § 13-90-107(1)(d). Accordingly, the privilege does not cover information obtained by a physician to assist a patient in pending litigation. Trenshaw, ¶ 30, 568 P.3d at 422. Nor would it cover a physician's testimony in a criminal case premised on a blood sample obtained at the request of a law enforcement officer investigating a defendant's level of intoxication. Id. 
 
12

 ¶30 In addition to the foregoing limitations, the legislature has carved out an exception to the physician-patient privilege for testimony relating to child abuse: "The statutory privilege between patient and physician . . . shall not be available for excluding or refusing testimony in any prosecution for a violation of this section [i.e., the statute defining child abuse]." § 18-6-401(3) (emphasis added). The Supreme Court has defined "[t]estimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford v. Washington, 541 U.S. 36, 51 (2004) (second alteration in original) (quoting 2 Noah Webster, An American Dictionary of the English Language (1828)); see also Testimony, Black's Law Dictionary (12th ed. 2024) (defining "testimony" as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition"). 
 D. Soron's Medical Records 
 ¶31 Turning then to the facts before us, we initially acknowledge Soron's contention that the POR at issue was not sufficiently particular and that it was overbroad. We need not address these concerns, however, because assuming without deciding that the POR was sufficiently particular and not overbroad, we conclude that the trial court properly determined that Soron's medical records are protected by the physician-patient privilege outlined in section 13-90-107(1)(d) and that those records do not fall within the above-quoted child abuse exception. 
 
13

 ¶32 Soron's medical records were created during the course of her treatment. Moreover, although a police officer was present when Soron was transported to and treated at the hospital, Soron had not been placed under arrest. And there is no indication in the record before us that the officer directed Soron's treatment for law enforcement purposes. Accordingly, we agree with the trial court that Soron's medical records were created as health care professionals were treating her and contained information necessary to allow the treatment providers to "prescribe or act" on her behalf as a patient. Id. Such records therefore fall within the physician-patient privilege. See id. 
 ¶33 The question thus becomes whether the above-noted child abuse exception to the physician-patient privilege applies here. We conclude that it does not. 
 ¶34 As noted above, the legislature expressly stated that the child abuse exception applies only to "testimony." § 18-6-401(3). In our view, this language is plain and unambiguous, and we must therefore apply it as written. B.C.B., ¶ 26, 569 P.3d at 79. Accordingly, we conclude that the child abuse exception does not apply to Soron's medical records, and, thus, those records remain privileged. 
 ¶35 We are not persuaded otherwise by the People's reliance on our opinion in People v. Christian, 632 P.2d 1031 (Colo. 1981). Unlike the case now before us, that case did not involve the admissibility of documentary evidence. Id. at 1036. Rather, the question was whether the marital privilege applied to bar the 
 
14

 defendant's wife's testimony in a child abuse case (notwithstanding the child abuse exception to the marital privilege), given the defendant's argument that his wife's testimony was unrelated to the issue of child abuse. Id. We concluded that the exception applied and that the wife's testimony was admissible because if her testimony was not probative of the child abuse charge, then it should have been excluded, not on the basis of privilege, but because it was irrelevant or prejudicial. Id. We determined, however, that the testimony was, in fact, relevant. Id. at 1037. This reasoning, which concerned a witness's testimony and not documentary evidence, has no bearing on the issues before us in this case. 
 ¶36 We further decline the People's invitation to follow decisions in other states concluding that the physician-patient privilege does not apply in circumstances involving alleged child abuse. Those cases involved statutory language different from the plain and unambiguous statutory language at issue here, which, as noted above, involves only testimony. See, e.g., State ex rel. Udall v. Superior Ct., 904 P.2d 1286, 1288-89 (Ariz.Ct.App. 1995) (concluding that medical records of a juvenile charged with first degree murder after her newborn child was found deceased were admissible when the statute excepting criminal prosecutions for child abuse from the physician-patient privilege did not distinguish between documentary evidence and testimony); State ex rel. Juv. Dep't v. Spencer, 108 P.3d 1189, 1192, 1195 (Or. Ct. App. 2005) (concluding that a juvenile charged with child abuse could not 
 
15

 rely on the psychotherapist-patient privilege to exclude testimony or records of his treatment when the pertinent statute excluded "evidence" from the privilege and did not distinguish between testimony and documentary evidence); In re M.C., 391 N.W.2d 674, 675-76 (S.D. 1986) (concluding, in a dependency and neglect matter, that the trial court had properly admitted the testimony of the mother's psychotherapist when the statutory exception to the physician-patient privilege in proceedings involving child abuse or neglect did not distinguish between testimony and documentary evidence). 
 ¶37 For these reasons, we conclude that the trial court correctly found that Soron's medical records were privileged and properly compelled the People to surrender those records to the court for preservation and sealing and to destroy any copies in the People's possession. 
 E. Body-Worn Camera Video and Related Notes 
 ¶38 Having determined that Soron's medical records are privileged, we turn to Officer Moreno's body-worn camera video and related notes. 
 ¶39 The trial court concluded that the body-worn camera footage reflected medical information and, thus, the video and the officer's related notes regarding Soron's treatment were privileged. The People contend that this was error because, in their view, the body-worn camera video was not created by medical personnel but rather was a statutorily required recording created by law 
 
16

 enforcement and is, therefore, not a medical record protected by the physician-patient privilege. We conclude that further proceedings are necessary to decide this question. 
 ¶40 In People v. Covington, 19 P.3d 15, 22 (Colo. 2001), we observed that the physician-patient privilege is a statutory creation in derogation of the common law and that the legislature may narrow that privilege when doing so satisfies an overriding public policy need. 
 ¶41 Here, although the trial court concluded that the body-worn camera footage and the officer's related notes reflected medical information within the scope of the physician-patient privilege, the court apparently did so without taking any evidence and without making evidence-based factual findings in support of that ruling. Moreover, in so ruling, the court does not appear to have considered whether the statutory requirements governing the use of body-worn cameras, § 24-31-902, C.R.S. (2025), evince countervailing public policy interests impacting the potential applicability of the physician-patient privilege in the circumstances presented here. 
 ¶42 Because we believe that the trial court is best positioned to consider these questions in the first instance, we reverse the portion of the trial court's order compelling the prosecution to seal the body-worn camera video and to provide the video to the court for preservation, and we remand to that court the issue of 
 
17

 the admissibility of the video and the officer's notes, with instructions that the court conduct the foregoing analysis and make appropriate findings in connection therewith. We, of course, express no opinion as to how the court should rule after conducting this analysis. 
 III. Conclusion 
 ¶43 For these reasons, we conclude that the trial court correctly determined that Soron's medical records are protected by the physician-patient privilege and that the child abuse exception to the privilege does not apply here. We further conclude, however, that additional findings are necessary to determine whether the information contained in the officer's body-worn camera video or the officer's notes is also protected by the physician-patient privilege and, if so, whether the legislature has narrowed the privilege based on other policy interests. 
 ¶44 Accordingly, we affirm in part and reverse in part the trial court's suppression order, and we remand this case to the trial court for further proceedings consistent with this opinion. 
 JUSTICE SAMOUR concurred in part and dissented in part. 
 
18

 JUSTICE SAMOUR, concurring in part and dissenting in part. 
 ¶45 I agree with the majority that it was error for the district court to conclude, without taking any evidence and making factual findings, that Officer Diego Moreno's body-worn camera footage and related notes reflect medical information protected by the physician-patient privilege, which is set forth in section 13-90-107(1)(d), C.R.S. (2025). Maj. op. ¶ 41. Relatedly, I agree with the majority that the court mistakenly failed to consider whether the statutory requirements governing the use of body-worn cameras, § 24-31-902, C.R.S. (2025), evince countervailing public policy interests impacting the potential applicability of the physician-patient privilege in the circumstances presented in this case. Maj. op. ¶ 41. Because the majority and I are of one mind regarding Officer Moreno's body-worn camera footage and related notes, I have no further comment on that front. 
 ¶46 Where I part company with my colleagues is on their conclusion that the child abuse exception to the physician-patient privilege hewn in section 18-6-401(3), C.R.S. (2025), doesn't apply to the medical records at issue. Maj. op. ¶ 31. On this front, I do have something to say. 
 ¶47 The exception sculpted by the legislature in section 18-6-401(3) provides that the physician-patient privilege "shall not be available for excluding or refusing testimony in any prosecution for a violation of this section [i.e., the statute defining 
 
19

 child abuse]." The majority arrives at today's decision by overtechnically construing the word "testimony" in this statutory exception to refer literally to "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Maj. op. ¶ 30 (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004), which in turn quoted 2 Noah Webster, An American Dictionary of the English Language (1828)); see also id. (quoting Black's Law Dictionary (12th ed. 2024), which defines "testimony" as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition"). 
 ¶48 So, what's wrong with giving the word "testimony" this rigid interpretation? It doesn't reflect the meaning the legislature intended, and it leads to absurd results. "[A]lthough we must give effect to the statute's plain and ordinary meaning, the intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result." Cisneros v. Elder, 2022 CO 13M, ¶ 21, 506 P.3d 828, 832 (quoting AviComm, Inc. v. Colo. Pub. Utils. Comm'n, 955 P.2d 1023, 1031) (Colo. 1998)). 
 ¶49 The majority's interpretation of "testimony" in section 18-6-401(3) flies in the face of our jurisprudence. We've long interpreted the physician-patient privilege to encompass both testimony and medical records.[1] Significantly, the 
 
20

 title of the privilege statute refers to "[w]ho may not testify without consent" and makes no mention of medical records. § 13-90-107 (emphasis added). Further, and equally significant, subsection (1)(d) of that statute (the physician-patient privilege) refers to the prohibition against a physician being "examined" without a patient's consent and likewise makes no mention of medical records. § 13-90-107(1)(d) ("A physician . . . shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient ...." (emphasis added)). Yet, neither the title of the privilege statute nor the language describing the physician-patient privilege has altered our understanding of the scope of that privilege as encompassing both testimony and medical records. 
 ¶50 Just last term, we observed that the physician-patient privilege isn't limited to "testimony"; it also "sweeps in" the information learned during pretrial discovery, including information contained in medical records. Trenshaw v. Jennings, 2025 CO 23, ¶ 26, 568 P.3d 413, 421. And this was no breaking news. Rather, it was merely recognition of a longstanding principle rooted in decadesold precedent. Id. at ¶¶ 25-26, 568 P.3d at 421 (first citing Clark v. Dist. Ct., 668 P.2d 3, 11 (Colo. 1983); 
 
21

 and then citing Hoffman v. Brookfield Republic, Inc., 87 P.3d 858, 861 (Colo. 2004)). Thus, a review of our case law reveals that we've never held, or even suggested, that the protective umbrella of the physician-patient privilege covers only testimony and leaves medical records exposed. 
 ¶51 Notably, the majority acknowledges that the physician-patient privilege shields both testimony and medical records. Maj. op. ¶ 28 (citing Trenshaw, ¶ 26, 568 P.3d at 421). But the majority doesn't explain its inconsistent treatment of, on the one hand, "testify" in section 13-90-107 and "examined" in subsection (1)(d) of that statute, and on the other, "testimony" in section 18-6-401(3). Instead, the majority completely ignores the elephant in the room: It doesn't so much as acknowledge our time-honored interpretation of "testify" and "examined" in section 13-90-107. Absent some indication that it's what the legislature intended, we may not construe the words "testify" and "examined" in the privilege statute (section 13-90-107) as applying to both testimony and medical records, while simultaneously interpreting the word "testimony" in the child abuse exception to that privilege (section 18-6-401(3)) as applying only to testimony. 
 ¶52 There is no basis to believe that in enacting section 18-6-401(3) the legislature intended a partial exception to the physician-patient privilege-one that applies to only part of the privilege (the part covering testimony, not the part covering medical records). This is particularly the case given that (1) the legislature used 
 
22

 almost identical language to define the privilege and the exception, and (2) although the legislature has amended the privilege statute numerous times in the last four decades, it has never taken steps to express any disagreement with our broad interpretation of "testify" and "examined" as embracing both testimony and medical records. See Bonde v. People, 2025 CO 24, ¶ 14, 569 P.3d 109, 113 (recognizing that "the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction" (quoting People v. Swain, 959 P.2d 426, 430-31 (Colo. 1998)). 
 ¶53 Moreover, cabining the exception as the majority does will lead to absurd results. In construing a statute, we must "avoid an interpretation that leads to an absurd result." State v. Nieto, 993 P.2d 493, 501 (Colo. 2000). 
 ¶54 Recall that the majority does not dispute that the medical records in question here are "material evidence in a . . . criminal prosecution in this state." Maj. op. ¶ 25 (quoting § 16-3-301.1(2)(e), C.R.S. (2025)). Indeed, in many child abuse cases, the child victim's medical records constitute the most material evidence in the case. 
 ¶55 After today's decision, how are the People supposed to prosecute a child abuse case like this one involving a single parent who is suspected of a child victim's death? Soron has refused to provide consent to allow the People access to pertinent medical records. True, the People will still be able to obtain the 
 
23

 treating physician's testimony at trial. But how do the People make decisions regarding charges, plea bargaining, and trial strategy before hearing what the physician has to say on the stand midtrial? Additionally, how do the People comply with their Crim. P. 16 obligations vis-a-vis such testimony? The availability of a physician's attestations in an affidavit certainly doesn't solve the problem. Will the People have to rely on an affiant physician to figure out what is relevant and important to their case from the records? Will the People likewise have to rely on an affiant physician's memory of the contents of the records for purposes of accuracy and comprehensiveness? Lastly, how will an affiant physician know the elements of the charged crime that must be proven beyond a reasonable doubt or what's admissible under the applicable rules of evidence? 
 ¶56 Given these conundrums, the child abuse exception to the protective mantle of the physician-patient privilege must reach medical records, not just testimony. To my mind, there is no support for the majority's decision to elevate form over substance and hold that in child abuse prosecutions a treating physician may provide testimony in an affidavit or at trial about the contents of relevant medical records, but the records themselves must remain off-limits because they are protected by the physician-patient privilege. 
 ¶57 I understand that the factual allegations against Soron make this case an outlier. But today's far-reaching opinion applies just the same to any other child 
 
24

 abuse case resulting in serious bodily injury or death. And if the defendant in such a case is a single parent, the People may have a nearly impossible time obtaining justice for the child victim. No one believes that this is what the legislature intended. It isn't. 
 ¶58 I am very concerned that today's opinion will inadvertently throw a monkey wrench into the prosecution of a large swath of child abuse cases. Mindful that children are the most vulnerable and defenseless members of our society, the General Assembly enacted the exception in section 18-6-401(3) because it realized that a defendant could improperly use the physician-privilege as a sword to hamper the prosecution of child abuse charges. Today's opinion not only fails to give effect to the legislature's intent in passing section 18-6-401(3), it unwittingly cuts the legs out from under it. 
 ¶59 Because the district court erred, and because the majority's strained interpretation of section 18-6-401(3) endorses this error, I respectfully dissent in part. I cannot, in good conscience, join the part of the majority opinion that upholds the district court's denial of the People's request for relevant medical records. 
 ¶60 For the foregoing reasons, I respectfully concur in part and dissent in part. I would reverse the district court's order in its entirety. 
 --------- 
 Notes: 
 [1] Like the majority, when I discuss either a physician's testimony or a patient's medical records in relation to section 13-90-107(1)(d) or section 18-6-401(3), I mean privileged information contained within such testimony or records. (The distinction between privileged and unprivileged information in a physician's testimony or a patient's medical records is laid out in the majority opinion, Maj. op. ¶ 29, so I don't repeat it here.) 
 ---------